## T. E. Smith v. The State.

### No. 3779.  Decided October 30, 1907.

**1.—Murder in First Degree—Principals—Charge of Court—Constructive Presence.**

Where upon trial for murder the evidence tended to show that the defendant at the time of the homicide was within a few feet of the house in which the homicide occurred, and was acting with the actual participants of the crime, this brought him in legal contemplation as a principal to the homicide, and made it a question of fact for the jury.

**2.—Same—Charge of Court—Criminal Intent—Independant Impulse.**

Where upon trial for murder the evidence showed that defendant's codefendant did the actual killing, the court should have charged the jury that if the jury believed or had a reasonable doubt whether such killing was upon an independent impulse of said codefendant, and not in pursuance of an agreement with the defendant, to acquit the defendant.  Defendant could only be bound by his own intent and criminal purposes, and where the evidence suggested such an issue the court should have charged properly under this phase of the case' upon the different degrees of murder as well as manslaughter.

**3.—Same—Charge of Court—Writ of Possession—Re-entry of Premises.**

Where upon trial for murder the evidence showed that the defendant had been dispossessed of the property where the homicide occurred, under a legal writ, and that he had returned immediately that night and attempted by force to retain possession of the property in the face of such writ, and that one of the officers in attempting to again dispossess defendant was killed by one of said codefendants, the court properly charged that defendant's re-entry after having been dispossessed by virtue of said writ was illegal and would give him no property rights by virtue thereof; especially when considered together in the light on the main charge.

**4.—Same—Evidence—Motive—Eviction—Advice of Counsel—Third Parties—Rebuttal.**

Upon trial for murder where the evidence showed that defendant and others had been legally evicted from the premises where the homicide occurred by a writ of possession, testimony with reference to the advice of his counsel as to a re-entry of such premises; and the acts of third parties who were not parties to said writ, could not be used in rebuttal to testimony by the State as to the bitter expressions used by defendant concerning the transaction.

**5.—Same—Evidence—Stenographic Report of Testimony of Codefendant—Contradiction of Witness.**

Where upon trial for murder the court improperly permitted the defendant to introduce the testimony of a codefendant taken during the latter's trial in chief, it not having been shown that said codefendant had been used as a witness for the defendant and was dead or beyond the jurisdiction of the court; it was nevertheless reversible error thereupon to permit the State in rebuttal to introduce a stenographic report of the testimony which said codefendant had given at a habeas corpus trial some time previous to his trial in chief, and which testimony was highly prejudicial to the rights of defendant.

**6.—Same—Evidence—Communications of Third Parties.**

Upon trial for murder where the State introduced testimony that on the evening before the killing the witness informed the attorney of defendant that the officers were going the next day to execute the writ of possession the second time, and there was also some testimony that the defendant had notice thereof, the court should have charged the jury that they should not consider such testimony unless they believed beyond a reasonable doubt that the witness' statement to defendant's attorney was communicated to defendant.

**7.—Same—Evidence—Contradicting Defendant.**

Upon trial for murder there was no error in permitting counsel for the State

to examine defendant on cross-examination touching the defense which had been interposed for him in the case theretofore.

Appeal from the District Court of McLennan. Tried below before the Hon. Sam R. Scott.

Appeal from a conviction of murder; penalty, imprisonment in the penitentiary for life.

The facts of this case appear in companion cases on former appeal. See Smith v. State, 46 Texas Crim. Rep., 267; Smith v. State, 48 Texas Crim. Rep., 233.

*John B. Durrett* and *J. E. Yantis,* for appellant.—On question of principals: McAlister v. State, 76 S. W. Rep., 760; Criner v. State, 53 S. W. Rep., 873; Wright v. State, 48 S. W. Rep., 191; Dawson v. State, 38 Texas Crim. Rep., 50, 41 S. W. Rep., 600; Renner v. State, 65 S. W. Rep., 1104; Rhodes v. State, 45 S. W. Rep., 1009; 2 Am. & Eng. Enc. of Law, p. 32; Commonwealth v. Knapp, 20 Am. Dec., 491; State v. Valwell, 66 Vt., 558. On question of re-entry of premises and court's charge thereon: Sinclair v. Stanley, 64 Texas, 74; Heironimus v. Duncan, 33 S. W. Rep., 287; Sims v. State, 44 S. W. Rep., 526; 19 Cyc. 1132. On question of advice: by counsel and acts of third parties: Russell v. State, 11 Texas Crim. App., 292; Lewallen v. State, 33 Texas Crim. Rep., 412; 12 Cyc. 296; Morrison v. State, 37 Texas Crim. Rep., 604. On question of permitting in evidence stenographic report of testimony of codefendant on habeas corpus trial: Evans v. State, 12 Texas Crim. App., 370; Johnson v. State, 1 Texas Crim. App., 333; Menges v. State, 21 Texas Crim. App., 413; Steagald v. State, 22 Texas Crim. App., 464; Childers v. State, 30 Texas Crim. App., 160; Long v. State, 10 Texas Crim. App., 197; Perez v. State, 10 Texas Crim. App., 329; Bennett v. State, 24 Texas Crim. App., 73; Williams v. State, 24 Texas Crim. App., 637; Walker v. State, 17 Texas Crim. App., 16; Rodriguez v. State, 23 Texas Crim. App., 502.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of murder in the first degree, and his punishment assessed at a life time imprisonment in the penitentiary.

This is a companion case to that of Smith v. State, 48 Texas Crim. Rep., 233, 13 Texas Ct. Rep., 939, and also the case of Smith v. State, 46 Texas Crim. Rep., 267, 10 Texas Ct. Rep., 984. Many of the questions raised by appellant in this record were decided by this court in the cases cited, therefore, many of them will not be again reviewed.

Appellant's 8th assignment of error complains that the court erred in failing to give special charges Nos. 6, 11 and 13, applying the law of principal offenders to the facts of the case, and erred in refusing to give special charge No. 7 instructing the jury as to the distinction

between principal and accomplice. These charges seem all to have been framed and presented -on the theory that the mere fact that appellant was not in the house at the time of the homicide, but was fifteen or twenty feet away from the gallery of the house, that he would not be a principal. The facts in this case are almost identical with the facts collated in the above cited decisions, which are companion cases to this. To render one a principal to a murder, his presence need not be strictly actual immediate presence, such as would make him an eye or ear witness of what passes, but may be a constructive presence, and where it appears, as it does in this case, that appellant, at the time of the homicide, was within a few feet of the house, his juxtaposition clearly brought him in legal contemplation as a principal to the homicide if the facts showed him acting with actual participants. For a discussion of this question see Grimsinger v. State, 44 Texas Crim. Rep., 1.

Appellant asked the court to give the following charge: "If you believe from the evidence that Addison Smith shot and killed deceased, but you further believe or if you have a reasonable doubt that such shooting was upon an independent impulse of his own, not in pursuance of an agreement with T. E. Smith (appellant), then you will acquit the defendant and so say by your verdict." This phase of the law was not presented in the charge of the court. If Addison Smith shot deceased upon an independent impulse disconnected from and disassociated with the motive and animus of appellant, appellant would not be guilty of any criminality in the act of Addison Smith. If Addison Smith was agitated and actuated by sudden impulse aroused by adequate cause, by the conduct of deceased towards his mother, and other circumstances surrounding the homicide, and under this intent alone acted, he might be guilty of no higher offense than manslaughter. Appellant can only be bound by his own intent and criminal purposes, and the evidence in this case, while it may be insisted it is meager, it does suggest the issue that Addison Smith may have been agitated by the environments to such an extent as rendered his mind incapable of cool reflection, and if so agitated, and the cause was not adequate, he might have been guilty of murder in the second degree, or if the cause was adequate, he might have been guilty of manslaughter independent of and disassociated from the appellant in this case, and if acting, as stated, upon an independent impulse, appellant would not be guilty of any participation in the felonious intent and purpose of Addison Smith. See Ripley v. State, 100 S. W. Rep., 943.

Appellant objects to the following charge of the court: "You are further charged that when a person is dispossessed of land by virtue of a writ of possession issued by a court of competent jurisdiction, such person has no right to again enter said premises and retake possession. Such an act would be illegal and such possession would give such person no property rights whatever by virtue thereof." This charge, when read in the light of the main charge, properly defines appellant's liabil-

ities.   The record in this case, and companion cases cited, shows that appellant had been dispossessed of the property · where the homicide occurred under a legal writ; he returned immediately that night and attempted by force to retain possession of the property in the face of a writ, and resisted the efforts of the officers to execute the writ.   We held in previous opinions of this court that the writ was not *functus officio* but the officers had a right to return again to the premises and to dispossess appellant of same.   The officers acting by legal authority of said writ had a right to so act, as stated, and any re-entry on the part of appellant would necessarily be illegal, and would necessarily follow as illegal from the validity of the writ.

The 10th assignment of error complains of the action of the court in excluding the testimony of the witness A. J. Harris, touching the claim of the defendant to the premises where the killing occurred, and the information concerning same given by witness to defendant showing the motive which actuated defendant in re-entering the said premises after he was evicted from same under the writ of possession. This question was decided by this court in the companion cases above against appellant's contention.   We there held that appellant could not justify his acts by erroneous advice given by his counsel either in civil or criminal case.   Nor did the court err in excluding the testimony of the witness as to what Pendleton, Hall and the Brewsters had done to defendant to cause him to use the bitter expressions proved by the State, since neither of said parties were parties to the writ, and the evidence in nowise connects them with this homicide.   To go into such matters would merely encumber this record with irrelevant testimony.

The 14th assignment of error complains that the court erred in permitting the State, over appellant's objection, to introduce and read in evidence to the jury a stenographic report of the testimony of Addison Smith given in his own behalf on the habeas corpus trial.   Appended to the bill presenting this matter is the following qualification:   "During the introduction of the testimony of the defendant T. E. Smith, appellant offered the testimony of his codefendant Addison Smith given by him in the trial of his own case in this court on the 27th day of October, 1904, which testimony was admitted over the objection of the State and under the authority claimed and cited by the defendant of Harrison v. State, reported in 47 Texas Crim. Rep., 393, 83 S. W. Rep., 700, which testimony of said Addison Smith undertook to detail what took place in the room at the time the deceased was shot, and the part which he, Addison Smith, took in the homicide.   Thereafter the State in rebuttal offered the testimony of the same witness Addison Smith, given · by him on a habeas corpus proceeding before the District Court in Bell County, on the 28th day of August, 1903, at which time said Addison Smith, Catherine Smith and this defendant, T. E. Smith, were jointly applying for bail, and at which time each of said defendants were present in the court and represented by their counsel, and John B. Durrett,

Esq., was counsel for all of said parties at the habeas corpus trial;
was also counsel for Addison Smith upon his final trial, and counsel
for Mrs. Catherine Smith upon her final trial, and was also counsel
for and present and participating at the trial of this defendant, T. E.
Smith." The case of Harrison v. State, cited by the court in his
explanation to the bill, did not justify or authorize the introduction of
this testimony. All that we held in said case was that on a prosecu-
tion for homicide, it being the theory of the defense that the crime was
committed by a witness for the State who testified that he was present
when defendant committed the crime, evidence of statements made by
the witness out of court conflicting with his testimony was admissible
as original evidence in behalf of the defense. This is, as we under-
stand, a salutary principle of law, because in this case the witness whose
testimony was sought to be impeached had previously testified against
appellant, and his testimony against appellant showed that appellant
was guilty and not he; then, clearly it was admissible to show that he
had made statements out of court contradictory of those he was making
on the trial of appellant, even if they did go to the extent of proving
his own criminality, because to whatever extent they should go along
this line, would to that extent have a strong tendency to disturb the
verity of his testimony against appellant, but here we have in this bill
of exceptions a very different statement of facts. T. E. Smith, and
his wife Catherine Smith, and his son Addison Smith, were indicted
for the murder of one I. B. Grubbs; all three had an examining trial
in Bell County; subsequently the cases were transferred to McLennan
County, and there Addison Smith was tried and convicted, and appealed
to this court, and his case affirmed; there Catherine Smith's case was
tried, but this court has no official information as to the disposition of
her case; then appellant was tried. Now then, appellant offered to
introduce what Addison Smith swore in his trial in this case, which
was done, as the court states, over the objection of the State, but never-
theless done; then, after this was done, the State over objection of
appellant introduced a long statement of Addison Smith in the shape
of a stenographic report of his testimony in the habeas corpus trial
in Bell County two or more years before. Certainly, this testimony
was not admissible. We wish to say that none of the testimony that
was introduced was admissible; that is to say, the defense had no right
to introduce Addison Smith's testimony on his trial in chief; parties
to that litigation were the State of Texas and Addison Smith; this
appellant was not a party, and the mere fact that the State held a joint
habeas corpus trial of all three, sometime before, wherein Addison
Smith gave his testimony during said trial, would not authorize the
State, whatever the defense had previously done, to introduce Addison
Smith's testimony in that examining trial. If appellant had been tried
and Addison Smith had been a witness for him, and had moved out of
the State, or died, then a predicate would have been laid for the in-
troduction of Addison Smith's testimony in the first instance, by the

defense, but there is no rule of law permitting it to be introduced, that we know of, either for the State or the defense, and it was clearly prejudicial error to do so; that is to say, that part that was introduced by the State of the examining trial testimony. Of course, we would not reverse the case where appellant introduced illegal testimony, as was done when appellant introduced the testimony of Addison Smith upon his trial in chief, but this would not render harmless the error of the State in introducing Addison Smith's testimony upon a habeas corpus trial. It is unnecessary to rehearse the testimony, but suffice it to say, it was highly prejudicial to the rights of appellant, and none of it was admissible under any known rule of law.

Appellant's 16th assignment of error complains that the court erred in admitting the testimony of Sam Sparks that on the evening before the killing, in Belton, Texas, the witness told Capt. Harris that the officers were going the next day to execute the writ of possession the second time. Appended to the bill presenting this matter is a long explanation of the court, as follows: "That the defendant T. E. Smith and the defendant's witness Capt. Harris, had both testified concerning the conversation they had over the telephone on the evening in question at about 5 o'clock, the substance of which testimony was by the defendant that he asked Capt. Harris if it was true that the officers were coming the next day to dispossess him under that writ, and that Capt. Harris responded to him that he did not know, but he would go to the sheriff's office and see the sheriff and report to him, Smith; that he did get in communication with the sheriff's office, but, not getting the information at that time, informed the defendant, Smith, that the sheriff was not in at that time and he could not give him a positive answer, that they appointed 6:30 o'clock, at which time Mr. Smith was to again call Capt. Harris up, at which time Capt. Harris was to report to him whether or not the officers were coming out the next morning; that at that hour Mr. Smith called Capt. Harris over the telephone, and Capt. Harris informed him that the sheriff had not yet returned, whereupon Mr. Smith asked Capt. Harris, in the event they did come, how close he must let him get to the house; that Capt. Harris responded to that, that he could not afford to resist the officers at all. Whereupon the defendant Smith requested Capt. Harris to come out to his place the next morning, and Capt. Harris informed him that he had other engagements and could not do so, but that he would see the sheriff as soon as he came in, and would get Mr. Saunders to come out to his place the next morning; and the evidence showed that Capt. Harris did talk with Sam Sparks immediately upon his return to the office on this same evening, and that he did send Mr. Saunders to the Smith place early the next morning, and Saunders was at the Smith home at the time the deceased and his brother officer appeared." With the explanation above copied, we believe the testimony was admissible, but upon another trial of the case the court should charge the jury that they should not consider the testimony of Sam Sparks

unless they believed beyond a reasonable doubt that his statement to Capt. Harris was communicated to appellant, therefore, the court should limit the testimony as suggested.

The 19th complaint is that the court erred in permitting counsel for the State to examine defendant touching the defense which had been interposed for him in the case heretofore. We see no error in this, since the court limited the inquiry as to what appellant knew about it; if he had heretofore claimed a defense, not relied upon in this trial, it would be legitimate testimony.

All of the other questions discussed by appellant in his brief and relied upon in this record for reversal, were passed upon by this court in the companion cases above cited. We do not see fit to again review them, but for the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Henderson, Judge, absent.