## W. H. BAKER v. THE STATE.

. No. 5711.  Decided May 5, 1920.

### 1.—Murder—Manslaughter—Charge of Court—Rules Stated.

It is the general rule that where an acquittal of murder results no error can be successfully predicated upon charging on that degree of the offense, unless it is made to appear that injurious results were produced thereby, and where there was nothing in the record bringing the case within this exception, there was no reversible error; besides the issue of murder was in the case.  Following White v. State, 44 Texas Crim. Rep., 346, and other cases.

### 2.—Same—Adequate Cause—Charge of Court.

Where, upon trial of murder and a conviction of manslaughter growing out of a sudden quarrel, with reference to the question of defendant subscribing to liberty bonds, deceased calling him a slacker and striking defendant with his open hand, the fact raising the issue of adequate cause, it was a question of facts for the jury which the court properly submitted to them, and the verdict for manslaughter will not be disturbed.

### 3.—Same—Evidence—Provocation—Self-Denfense—Manslaughter.

Where, defendant was not permitted to prove his patriotism during the recent war. having been called a slacker by the deceased, the jury having found him guilty of manslaughter. and the rejected testimony would not have aided the jury in deciding whether the shots were fired in self-defense, nor was it applicable to the question of manslaughter under the facts of the instant case, there was no reversible error.

### 4.—Same—Evidence—General Reputation—Suspended Sentence.

Prior to the suspended sentence law, the reputation of one accused of crime was a subject upon which the State was not permitted to introduce evidence unless invited by the accused.  But under said statute the invitation is extended and reputation is to be proved by competent evidence, whether it is good or bad.  Following Fannin v. State, 51 Texas Crim. Rep., 41. and other cases, and specific acts become available when pertinent upon cross-examination.  Following Williamson v. State, 74 Texas Crim. Rep., 290, and in the instant case there was no reversible error in permitting the State, on cross-examination, to show that while defendant resided in another county some sixteen years previous to the trial, he had paid two fines for drunkenness.

### 5.—Same—Self-Defense—Charge of Court.

Where, upon trial of murder and a conviction of manslaughter, the court's charge on self-defense informed the jury that it was not necessary that there should have been actual danger provided defendant acted upon the reasonable appearance of danger from defendant's standpoint, and also submitted requested charges on this basis, there was no reversible error.

87 Tex.—20

Appeal from the District Court of Runnels.   Tried below before the Honorable J. O. Woodward.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

*A. K. Doss, I. W. Culp* and *W. W. Hair,* for appellant.—On question of general reputation.   Under plea of suspended sentence: Bolins v. State, 204 S. W. Rep., 335.

On question of rejected evidence as to defendant's patriotism: Belcher v. State, 161 S. W. Rep., 459; Morrison v. State, 40 id., 591.

On question of refusal of requested charges on self-defense: Edwards v. State, 151 S. W. Rep., 294.

On question of submitting a charge of murder: Cannon v. State, 208 S. W. Rep., 339.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, Judge.—The conviction is for manslaughter, and punishment fixed at confinement in the penitentiary for two years.

That the appellant shot and killed the deceased is conceded.   The issues of murder, manslaughter, and self-defense arose from the evidence, and were submitted.   Appellant, insisting that the issue of murder was not raised, complains of the fact that it was submitted to the jury, also of the manner of its submission.   It is the general rule that where an acquittal of murder results no error can be successfully predicated upon charging upon that degree of the offense, unless it is made to appear that injurious results were produced thereby.   White v. State, 44 Texas Crim. Rep., 346; Nelson v. State, 51 Texas Crim. Rep., 349, other cases in Branch's Texas Crim Law, p. 252, Sec. 420. We find nothing in the record bringing the case within this exception. Moreover, we do not concur in the view that the issue of murder was not raised.

Appellant's theory, as presented by his testimony, was that there was a marked disparity in the relative strength of himself and deceased, the latter being the stronger man; that a few moments before the difficulty he had in conversation with a lady declined to buy Liberty Bonds on the ground that he was too poor to do so, declaring, however, that he would do so if he succeeded in raising some money; that deceased approached, taking part in the conversation, and appellant's statement was repeated to him, when the deceased said: "Anybody that wouldn't buy bonds is a slacker;" appellant replied: "Don't call me a slacker, I am doing my best and want to do my duty. I don't want any man to call me a slacker because I haven's' the money to buy bonds." Deceased replied: "You are a God-damn slacker;" and appellant said: "You are a liar," upon which the deceased struck the appellant a blow upon the left side of the head, hurting him and knocking him back two or three feet, and before he

balanced himself deceased struck him again, knocking him farther back, when appellant began retreating, deceased following him up; and, noticing the deceased put his arm in a position to get a gun, the appellant drew his pistol and fired the first shot from his hips, then raised the pistol and continued to fire until the deceased fell. Evidence was introduced that the deceased was at the time drinking, and that he was violent and dangerous when under the influence of liquor. Both of these issues were controverted.

The version of the affair given by the state witnesses was in substance that deceased approached and asked the subject of the conversation; was informed that it was about buying Liberty Bonds, when deceased remarked that he thought everybody ought to buy a Bond if able to do so, and that one who was able and didn't buy was a slacker. Appellant remarked that he had not bought any, when the deceased said: "Well, if the shoe fits you, wear it;" and appellant said: "You are a liar," upon which the deceased slapped the appellant with his hand. Appellant began to back, and threw his hand behind him, and drew his pistol and began firing, shooting four times. After deceased fell, appellant said that no man could call him a slacker and live over it. At the time the shooting began the deceased was standing still. Some of these witnesses claimed that deceased struck appellant but once, and then his hand merely brushed his head when the appellant stepped back. Whether in fact deceased struck the appellant and whether if he did strike him, under all the surrounding facts the appellant's mind was rendered incapable of cool reflection, were not questions of law to be decided by the court against the State, but were to be submitted to the jury for their solution. They did solve them in favor of the appellant, reducing the homicide to the last degree included in the indictment, and assessing therefor the lowest punishment permitted by law. The charge on murder, therefore, although it may have been inaccurate in some of its terms, cannot avail to work a reversal.

Appellant testified that immediately before the difficulty, while he was in conversation with a lady explaining to her that he did not at the time have money with which to buy Liberty Bonds but would do so when circumstances permitted, in which conversation he told her that some of his boys were in the army and that he was willing that others should go, the deceased approached and in the course of the conversation called him a slacker. He explained that his life had been threatened, and that upon the advice and warning of his friends he had possession of the pistol. The appellant offered to prove by his own testimony and others, various facts going to show his intense patriotism, the fact that there were many disloyal Germans in the community, that a friend of appellant's had been stabbed by a disloyal German, and that there was feeling in the community against disloyalty, that the appellant's opposition to disloyalty was known and resented by those who were disloyal. It is appellant's contention

that this testimony was admissible in support to this defensive theory of manslaughter and self-defense, and upon the question of whether his sentence would be suspended, and that its exclusion was harmful error. It was before the jury without dispute that between the appellant and the deceased there was no previous ill-will, that the homicide took place in a sudden quarrel, the appellant was permitted to testify that he took the pistol to protect his life, that a man named Turk had stabbed a Mr. Grant, and that he, appellant, had heard that Turk had made threatening remarks toward him, and had been warned to watch him. If the excitement incident to the war times. the presence of Germans in the community who discussed their affairs in the German language and manifested disloyalty to the Government, and resentment against those who were loyal, would contribute to bring his mind to a state incapable of cool reflection, we are unable to discern in what sense the exclusion of such testimony could have resulted to his disadvantage when it is recalled that the jury found that the state of his mind was such that his offense was reduced to manslaughter. We also fail to comprehend how the phase of the proffered evidence mentioned would have aided the jury in deciding whether the shots were fired in self-defense. There is no suggestion that the deceased Rogers was in any way identified with the disloyal element, or connected with those whose resentment was aroused against the appellant for any conduct of his in suppressing disloyalty. On the contrary, it appears that the zeal of deceased led him to criticism of the failure of appellant to buy Liberty Bonds, and to classify the appellant by reason of this failure as a slacker, thereby arousing his resentment, and producing passion which, in the judgment of the jury, rendered him incapable of committing murder. The issue of self-defense, however, depended upon the appellants view of the incidents of the present event, in the light of his knowledge of deceased and his character, and in excluding the evidence, appellant's theory of self-defense was not in any degree abridged.

The suspended sentence law, Article 8650, C. C. P., opens the way for the State to prove "the general reputation of the accused where the issue of suspended sentence is presented by him." The method of proving general reputation, and the limitations incident to it, were understood at the time the statute was enacted, and we find nothing in the law indicative of an intention on the part of the Legislature to change these rules. Prior to the passage of the statute, the reputation of one accused of crime was a subject upon which the State was not permitted to introduce evidence unless invited by the accused. The statute mentioned extends the invitation. The reputation is to be proved, not by specific acts of misconduct, but by competent evidence to show whether his reputation is good or bad. Thompson v. State. 38 Texas Crim. Rep., 340; Fannin v. State, 51 Texas Crim. Rep., 41; Jones v. State, 74 Texas Crim. Rep., 205, 167 S. W. Rep., 110; Branch's Annotated Texas Penal Code, Sec. 148. Specific acts be-

come available when pertinent on cross-examination. Howard v. State, 37 Texas Crim. Rep., 498; and other cases. Branch's Annotated Texas Penal Cade, p. 117. The leading case construing the section of the suspended sentence Act, relating to proof of reputation, adheres to the rule stated, and we see no reason for expanding it to a degree that it embrace inquiries of a character sought in the instant case nor have the authority to do so. Williamson v. State, 74 Texas Crim. Rep., 290.

The appellant testified on cross-examination that while he resided in Bell County, some sixteen years previous to the trial, he had paid two fines for drunkenness. The admission of this testimony over appellant's objection is made the subject of bitter complaint. The remoteness of this evidence, we think, would render it inadmissible, except for the fact that it seems to have been pertinent to an issue presented by the appellant. This we gather from the examination of the witness Ratliff, who, upon his direct-examination by the appellant, said he had known Mr. Baker for twenty-five years, and was acquainted with his reputation among the people who knew him as a peaceable, law-abiding citizen, and that such reputation was a good one. The witness testified upon cross-examination that while the appellant resided in Bell County he had heard of his making an assault but had not heard of his drinking and disturbing the peace. On re-direct-examination he said that the appellant, within his knowledge, had been a "teetotaler" for ten or fifteen years, had joined the church many years ago, and not been drunk any that he knew of since—he had not seen him when he had had a drink within the last ten years. Considering the scope and character of this examination, we are constrained to the view that the ruling complained of does not require or authorize a reversal of the judgment.

In his charge on self-defense the court in a general statement informed the jury "that it was not necessary that there should have been actual danger, provided he acted upon the reasonable appearance of danger as it appeared to him from his standpoint at the time." The balance of the charge on this subject related to an actual attack, and the appellant now complains of the failure of the court to charge on the law of apparent danger. In view of the special charges given at the request of the appellant, we think the criticism is not well founded. In Special Charge No. 1, which the court read after making the general statement similar to that in the main charge, the following language was used:

"Now if from the evidence you believe the defendant killed the said James Rogers, but further believe that at the time of so doing the deceased Jim Rogers had made a gesture toward his pocket with his right hand which made it reasonably appear to the defendant, judged from his standpoint at the time that the deceased was preparing to attack him with a pistol or a deadly weapon and that the defendant acting under a reasonable expectation or fear of death or serious

bodily injury, shot and killed the deceased you will acquit the defendant and say by your verdict "Not Guilty."

Special Charge No. 2, also given, contained the following:

"If from the evidence in this case you believe the defendant killed the said James Rogers, but further believe that at the time of so doing the deceased was preparing to make an attack on the defendant, as viewed by the defendant from his standpoint, which from the manner and character of it and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or of serious bodily injury, and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him and say by your verdict "Not Guilty."

Finding nothing in the record which authorizes reversal of the judgment, its affirmance is ordered.

*Affirmed.*