# MAY, 1922

---

### O. J. Johnson v. The State.

No. 6422.   Decided December 14, 1922.

Rehearing Granted May 3, 1922.

1.—Murder—Bill of Exceptions—Questions and Answers.

Bill of exceptions in the form of questions and answers will not be considered on appeal. Following Ferguson v. State, 83 Texas Crim. Rep., 372, and other cases.

2.—Same—Race Discrimination—Bill of Exceptions.

When an attempt is made to raise the question of discrimination on account of race and color, the evidence on such question, by bill of exceptions in question and answer form cannot be considered on appeal. Following Plummer v. State, 86 Texas Crim. Rep., 493, and other cases.

3.—Same—Reproduction of Testimony—Predicate.

Where a proper predicate is laid, showing that the State's witness had died since the former trial, reproduction of his testimony was admissible, following Porch v. State, 51 Texas Crim. Rep., 7, and other cases.

4.—Same—Charge of Court—Murder.

Where the defendant objected to the court's charge because the issue of murder was submitted, there was no reversible error in the instant case, in overruling such objection.

5.—Same—Manslaugher—Charge of Court.

Where, upon trial of murder, the evidence called for the court's charge on manslaughter as it appeared in the record, there was no error in refusing specially requested charges on the part of the defendant, on the same subject; besides, the main charge covered all the matters set out in the requested charges.

6.—Same—Argument of Counsel—Bills of Exception—Practice in Trial Court.

Where the trial court found that neither of the bills of exception tendered by both counsel for defendant and for the state were correct, and prepared a bill himself in lieu thereof, there was no reversible error.

7.—Same—Rehearing—Suspended Sentence—Statutes Construed—General Reputation.

Prior to the enactment of the suspended sentence law, the general reputation of the accused, when invited by himself, was limited to the particular trait of character then under investigation; this is not true under the suspended sentence law; but whenever that issue is raised, proof of general reputation must be made in accordance with the well established rules, and while defendant was not authorized to prove as original evidence that he had never before been arrested, specific acts of misconduct of the defendant are not available to the State on the issue of suspended sentence. Following Fountain v. State, recently decided.

8.—Same—General Reputation—Rule Stated.

When accused undertakes to support, or the State to attack, his general reputation, it must be done in the same manner, be governed by the same rules, and subject to the same exceptions where the suspended sentence law is involved as in other cases.

Appeal from the District Court of Newton. Tried below before the Honorable V. H. Stark.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*D. M. Short & Sons,* for appellant.—Cited cases in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Conviction is for murder. Penalty assessed at death.

This is the second appeal. The former opinion will be found reported in 86 Tex. Crim. Rep., 566, 218 S. W. Rep., 496. The present record contains evidence not shown on the former appeal. The witness who testified on the former trial that within five minutes after the shooting deceased told him "Old 'It' shot me," said upon the latter trial, that in the same conversation deceased also said "I shot the man who shot me." It appears from the record that appellant was the only person shot except deceased. Another witness, Brock, whose testimony was reproduced, claims that appellant told him short-

ly after the shooting: "I shot Mr. Yarbrough and Mr. Yarbrough shot me." We do not find the latter testimony incorporated in the statement of the evidence in the former opinion.

The statement of facts consists of fifty-eight pages, thirty-eight pages of which are in questions and answers. Two pages of this is the reproduction of Bud Brock's evidence from the stenographic notes on a former trial. This much we will consider. The remainder of the statement of facts which appear in that form will not be considered. Ferguson v. State, 83 Texas Crim. Rep., 272; Rooney v. State, 73 Tex. Crim. Rep., 121; Felder v. State, 59 Texas Crim. Rep., 144; Hargrave v. State, 53 Texas Crim. Rep., 147; Fox v. State, 53 Texas Crim. Rep., 150; No. 6447, Parker v. State, (decided December 7th, 1921, not yet reported). For other cases see notes under Article 846, Vernon's C. C. P.

An attempt was made to raise the question of discrimination against appellant in the selection of the venire on account of his color. The evidence on this issue covers thirty pages of typewritten matter in question and answer form in a bill of exceptions. This cannot be considered by us. We have often expressed our disapproval of bills in this condition. (See Note 21 Vernon's C. C. P. page 537 for authorities); also, R. S. Art. 2059; Plummer v. State, 86 Texas Crim. Rep., 493; Jetty v. State: (No. 6407, decided November 30th, 1921, not yet reported); Parker v. State; (No. 6447, decided December 7th, 1921, not yet reported).

Exception was reserved to the reproduction of the evidence of Bud Brock, who testified on a former trial. Proper predicate was laid showing that Brock had died since the former trial. Counsel for appellant admits that since the decision in the case of Porch v. State, 51 Texas Crim. Rep. 7; 99 S. W. Rep. 1122, the holdings have been adverse to his contention. The Porch case was decided in 1907, and the opinions of this court since have consistently followed the rule there announced. One of the latest reported cases in which the principle was approved is Brent v. State, 232 S. W. Rep., 845.

Objections were filed to the court's charge because the issue of murder was submitted, the contention being that the evidence failed to raise the issue; that at most accused could be guilty of no graver offense than manslaughter. We are not able to agree with appellant in this. The evidence seems fairly to raise the issue.

As a part of the main charge on the issue of manslaughter the court told the jury, substantially; that, if Nellie Baldwin had taken money from appellant forceably or stealthily, and that he followed her, armed with a pistol, and was making an effort to recover the money, and that deceased interfered and was preventing or attempting to prevent appellant from recovering it, or it so appeared to appellant, and that deceased's acts were such as to create sudden passion in the mind of appellant, and he killed under such circumstances, he would

be guilty of manslaughter. Objections were seasonably made to this portion of the charge on the ground that no testimony in the case raised the issue, but that all the evidence showed deceased was trying to aid appellant in recovering his money. The evidence showed that appellant was trying to recover his money, and said in deceased's presence that he (appellant) would kill the woman if she did not give the money up, having in his hand a pistol at the time; that deceased said to him, substantially: "There is no use to kill anybody. I'll help you get your money; give me the pistol," at the same time reaching for it. We think the evidence called for the charge. Notwithstanding deceased had promised to help him get the money, yet if it appeared to appellant that he was about to be disarmed, and deprived of the means to secure the surrender of his property by the woman, then to that extent it may have appeared to appellant that deceased was hindering appellant in his effort to get back his property. We find that appellant requested a special charge, numbered six, the refusal of which is covered in bill of exceptions No. 12, much to the same effect. The court is requested to tell the jury that if at the time of the killing deceased was threatening to take from appellant a pistol and he shot deceased to prevent him from doing so, to find appellant guilty of manslaughter, unless they found it was necessary for appellant to kill deceased to prevent him from taking the pistol, in which event they would acquit him.

Complaint is made at the refusal of the court to give special charges Numbers 2, 3, 5 and 6. In submitting the issue of murder, the court required the jury to find (before they could convict of that offense), first, that the killing was not done by appellant in defense of property which appellant thought had been unlawfully taken from him by Nellie Baldwin; second, that he did not fire at Nellie Baldwin; third, but that he denied to, and did fire at deceased. Upon appellant's theory that he was not acting in the defense of his property to prevent a theft, but was trying to recover that which had already been stolen, the court gave a special charge instructing the jury, that if Nellie Baldwin took from the possession of appellant money belonging to him, and appellant immediately pursued and overtook her, not leaving her out of his sight, and attempted to kill her while trying to recover his stolen property, and while trying to kill her he killed deceased, they should acquit him of murder. Upon the issue of manslaughter (in addition to what has been discussed in the foregoing paragraph) the jury were told that if appellant, under the influence of passion from an adequate cause, but not in defense of property taken from him by Nellie Baldwin, killed deceased while trying to kill her, he would only be guilty of manslaughter. Then supplementing the instructions, he gave at appellant's request two special charges. No. 7 substantially being to the effect, that if Nellie Baldwin had stolen appellant's money; had been pursued and overtaken by

appellant, the return of the money demanded and refused, appellant killed deceased, intending to kill her, and if he had killed her, that the offense would only have been manslaughter, they could only find him guilty of manslaughter in killing deceased. No. 8, is in substance, that if appellant intended to kill Nellie Baldwin, and the jury had a reasonable doubt whether the killing of Nellie Baldwin would have been manslaughter, as defined in the main charge, then killed of deceased would also be manslaughter. We do not set out the special charges refused, but after a careful examination of them we believe the main charge and the special charges given covered every issue raised by the evidence, and that no error was committed in refusing to give special charges Nos. 2, 3, 5 and 6, which appear in bills of exceptions 6, 9, 11 and 12. The specific defense made by appellant's own evidence was that he never fired at all, but that the shot which killed deceased was fired by a negro bearing the unique cognomen of "It." This issue was submitted and the jury decided it adversely to appellant's contention. Guarding, as it occurs to us, every right of accused which by any possible reasoning could arise from the testimony, the court even submitted negligent homicide.

Appellant filed an application for suspended sentence. In support of that issue he offered testimony that his reputation as a peaceable and law-abiding citizen had been good. He also supported the same by his own testimony, not only to the effect that he had never been convicted of a felony, but he testified that "he had never been arrested during all of his life." In rebuttal the state introduced, over objection, upon the issue of suspended sentence the testimony of one A. H. Bracken. The court stated in the presence of the jury that the testimony was admitted only upon the issue of suspended sentence, and also properly limited it to that issue alone in his charge. Bracken's testimony in substance was, that he owned and operated a service car; that six weeks or two months before the killing he had hauled several negroes, including appellant, to Pineland to attend a moving picture show; that he was also to wait and take them back to the turpentine camp; that just before they were ready to start back there was a difficulty between appellant and another negro at the car; they were trying to fight; that the constable, a white man, came up and tried to arrest them; that appellant drew a pistol on the constable and defied him, and prevented him from making the arrest. This testimony was objected to on the ground that it threw no light upon the guilt or innocence of accused, and was calculated to prejudice the minds of the jury against him. The incident had no bearing upon the question of guilt or innocence. Appellant was a negro charged with killing the boss of the turpentine camp, a white man, under whom accused worked. Bracken's evidence that shortly before this killing appellant had prevented his arrest by drawing a pistol on a white officer was of a hurtful character, and unless clearly ad-

missible on some issue in the case should have been excluded. As was said in Williamson v. State 74 Texas Crim. Rep., 290, 167 S. W. Rep., 360, when appellant files application for suspended sentence the law then puts in issue his general reputation. In that case, and also in Baker v. State 87 Texas Crim. Rep. 305, and in Wagley v. State 87 Texas Crim. Rep., 504, this court undertook to lay down general rules by which in suspended sentence cases such "general reputation" shall be established, but at the same time recognized many apparent exceptions to the rules, dependent on the manner in which proof of certain facts become pertinent, which otherwise might not be admissible. The Baker case furnishes an instance which is very similar in principle to the question in the present case. After reciting the evidence admitted, Judge Morrow, speaking for the court, said: "The remoteness of this evidence, we think, would render it inadmissible, except for the fact that it seems to have been pertinent to an issue presented by the appellant." In the instant case appellant testified that he had never in all his life been arrested. The inference of the jury naturally would be, and the impression likely sought to be made was, that his past conduct was of such exemplary character that no act of his authorized his arrest. If Bracken's testimony be true, the state met the issue injected by appellant by showing he was subject to arrest for an act committed in the presence of an officer, and avoided same by violent resistance. While proof of such a transaction would not perhaps have been available to the state as original evidence on the issue of suspended sentence, yet, we find no error in its admission under the circumstances.

Two bills of exceptions appear in the record to argument of representatives of the state in closing the case. It is disclosed that both counsel for appellant and the state prepared bills on these matters, neither of which the judge thought correct, and he prepared and filed bills in lieu thereof. The bills are not discussed at any length by us. We have examined same carefully and have been unable to discover ground for any serious complaint. We are bound by the recitals in the bills, and as thus presented no error is shown.

On account of the extreme penalty having been assessed in this case, we have carefully considered all questions arising. We have found no errors which would warrant a reversal. The legal rights of appellant appear to have been jealously guarded at all points. The killing occurred in Sabine County. Venue was changed to San Augustine County where a death penalty was assessed. Upon reversal of that judgment, the case was transferred to Newton County and the extreme penalty again fixed by another jury. These juries in counties other than that in which the homicide was committed must be presumed to have been free from any feeling, and to have reached their verdict solely from the facts before them. We would be encroaching upon their domain to reverse because of the penalty in-

flicted, unless the verdict under all the facts shocked the judicial conscience to let it stand.

The judgment of the trial court is affirmed.

*Affirmed.*

### ON REHEARING.

### May 3, 1922.

HAWKINS, JUDGE.—Appellant insists that we were in error in holding the testimony of A. H. Bracken to have been admissible upon the issue of suspended sentence. We fully realized the importance of this testimony and its harmful character, and the question gave us no little concern in considering the case upon original submission. The same question has had our attention in other cases before us since this motion for rehearing was filed. After a careful reconsideration we have reached the conclusion that we were in error in holding this testimony admissible. Unfortunately the decisions relating to proper evidence to be received upon the issue of suspended sentence cannot be harmonized, and in order, if possible, to make clear the view of this court with reference to the matter we state here the reasons which have led us to conclude we were in error with reference to the matter we state here the reasons which have led us to conclude we were in error with reference to Bracken's testimony. We quote the first portion of Article 865C, C. C. P., relative to suspended sentence, as follows:

"The court shall permit testimony and submit the question as to the general reputation of defendant to enable the jury to determine whether to recommend the suspension of sentence."

In Williamson v. State, 74 Texas Crim. Reports, 289, the general rules with reference to the admission of testimony upon the issue of suspended sentence were stated, and announced the proposition that when an application therefor was filed by a defendant that he thereby placed his general reputation as a peaceable. law-abiding citizen in issue. With the general rules and proposition so announced we are in accord. We desire, however, to call attention to one matter in the Williamson case, the correctness of which we question, and which we think has led to some confusion. On cross-examination of Williamson he was asked if he had not been arrested as many as a dozen times. He admitted that he had been arrested three or four times, and had been in the city jail on more than one occasion. He objected to this testimony because on those occasions he was charged with misdemeanors. Later on in the opinion, is found this language.

"While *all* evidence objected to was admissible to enable the jury to determine whether they would suspend punishment for the offense committed in case they found him guilty . . . it was not admissible as affecting the credit of defendant as a witness."

In so far as the language quoted might appear to authorize the State to show as original evidence that he had been arrested on other occasions for misdemeanors and had been in jail as bearing on suspended sentence, we question its correctness, as not being in harmony with the general rule as to proving "general reputation."

In Baker v. State, 87 Texas Crim. Rep., 305, 221 S. W. Rep., 607, will be found the following language:

"The suspended sentence law . . . opens the way for the State to prove the general reputation of the accused where the issue of suspended sentence is presented by him. The method of proving general reputation, and the limitation incident to it were understood at the time the statute was enacted and we find nothing in the law indicative of a purpose on the part of the legislature to change these rules. Prior to the passage of the statute (suspended sentence law) the reputation of one accused of crime was a subject upon which the State was not permitted to introduce evidence unless invited by the accused. The statute mentioned extends the invitation. The reputation is to be proved, *not by specific acts of misconduct* but by competent evidence to show whether his reputation is good or bad."

Prior to the enactment of the suspended sentence law the general reputation of accused, when investigation thereof was invited by himself, was limited to the particular trait of character then under investigation. This is not true under the suspended sentence law. Whenever that issue is raised by filing an application for suspended sentence then an inquiry as to the general reputation of accused as to being a peaceable, law-abiding citizen becomes pertient as proper for the jury to know whether he is the kind of man who would be entitled to have such clemency as he requests, but the proof of *general reputation* must be made in accordance with the well established rules. In order that there may be no further confusion with reference to proper proof of *general reputation* incident to the issue of suspended sentence it will be well to refer to some of the text writers upon the subject. Mr. Wigmore in Vol. 1, Sec. 193, discussing whether particular acts of misconduct on the issue of general reputation are admissible, says:

"This last sort of evidence is now to be considered. The law here declares a general and absolute rule of exclusion. It is forbidden in showing that the defendant has not the good character which he affirms, to resort to particular acts of misconduct by him."

Wharton's Criminal Evidence, 10th Edition, Vol. 1, Section 61, reads:

"When a defendant has voluntarily put his character in issue, it is not competent nor relevant to the issue, to admit in rebuttal on the part of the prosecution evidence of a series of independent facts, each forming a constituent offense. Rebutting evidence of bad reputation is however always admissible."

· Underhill, Section 81, states the rule as follows:

"Character, i. e., the general reputation which the accused possesses and enjoys among his acquaintances may be shown by the testimony of such persons only. The witness is not competent unless it is first shown that he knows such reputation which must be that current in the neighborhood where both he and accused reside."

Section 82 reads:

"*Evidence of specific acts of bad conduct is not admissible to show bad character.* The accused may always be prepared to meet an attack on his general character, but can not fairly be required, without notice, to controvert particular facts. But a witness to good character may be asked on cross-examination whether he has heard rumors of particular and specific charges of the commission of acts inconsistent with the character which he was called to prove, and generally as to the grounds of his evidence, not so much to establish the truth of such facts or charges, as to test his credibility."

The rules relative to proving general reputation as announced by the foregoing text writers have been recognized in too many cases from this court to require reference, and were well known to the Legislature at the time the suspended sentence law was passed and there is nothing in that law to indicate that the Legislature intended or desired to establish any different rule. There is also found in Section 81 of Underhill the following language:

"Evidence of good actions of the accused is not admissible to prove his good reputation."

This rule as it applies to the suspended sentence law has been followed in Wagley v. State, 87 Texas Crim. Rep., 504, 224 S. W. Rep., 687, and in Brown v. State (opinion April 12th, 1922), where it was specifically held by us that the defendant had no right on the issue of suspended sentence to prove as original evidence that he had never before been arrested as showing his good character. Of necessity accused must show he has never been convicted of a felony to avail himself of the plea at all, and the State may likewise defeat the plea by proof that he has been so convicted. In Moore v. State, 237 S. W. Rep., 932, and Fountain v. State (opinion December 21st, 1921), we held that specific acts of misconduct were not properly provable by the State on the issue of suspended sentence. We are not discussing evidence elicited on cross-examination of an accused who may have filed an application for suspended sentence with reference to offenses of which he may have been convicted or legally charged involving moral turpitude as affecting his credibility as a witness. Neither do we intend to convey the idea that upon the cross-examination of witnesses who may be called by him to establish his good reputation that they may not be interrogated as to their knowledge or information with reference to specific acts of misconduct of accused affecting the weight of their testimony in his behalf. What we desire to impress is,

that when accused undertakes to support, or the State to attack his "general reputation," it must be done in the same manner, be governed by the same rules, and subject to the same exceptions. where the suspended sentence is involved, as in other cases. In the instant case while appellant was on the stand he was asked by his counsel if he had ever been convicted of a felony. It was necessary that this proof be made in order that his application for suspended sentence be submitted to the jury at all. He replied to that question that he had not been, and then injected a matter not responsive to the question, that he had never been arrested at any time. We based our original opinion on the proposition that this issue having been injected by appellant then the State had a right to meet it by the testimony of Bracken. In this we believe we were in error, having reached the conclusion in Brown v. State (supra) that appellant had no right upon the issue of his general reputation to show that he had never been arrested. It became the duty of the State when that issue was injected by appellant in the instant case to have objected thereto, or move that the same be stricken from the record. Having permitted this illegal testimony to get into the record without objection the State could not under the guise of rebutting it introduce other illegal evidence over objection of appellant. Zimmer v. State. 64 Texas Crim. Rep., 114; Smith v. State, 52 Texas Crim. Rep., 32. We recognized in our original opinion the correctness of the general rules announced in the cases of Williamson, Baker and Wagley (supra) but based the opinion upon what we conceived at the time to be an exception similar to that in the Baker case. A closer analysis of that opinion discloses that the apparent exception came about incident to the cross-examination of the witness Ratliff who had testified to the good reputation of defendant. Upon his cross-examination certain facts were elicited which seems to have made pertinent the testimony about which the defendant there complained. As suggested by appellant in his motion for rehearing in the instant case. if the witness Bracken could have qualified as to knowledge of appellant's general reputation he might have been asked by the State if it was good or bad, and if he answered that the same was bad then appellant on cross-examination might have inquired into his reasons, but we have concluded that the State ought not to have been permitted to prove by Bracken the facts elicited from him as original evidence which were with reference to an isolated transaction. and perhaps showed misconduct on the part of appellant, but which, as heretofore shown, could not be done as affecting his general reputation. There can be no question but that this testimony was exceedingly harmful under the circumstances, furnishing a somewhat similar occurrence to that in which Mr. Yarbrough came to his death at the hands of appellant.

Believing ourselves to have fallen into error, the motion for re-

hearing is granted, the judgment of affirmance set aside, and the judgment of the trial court reversed and the cause remanded.

*Reversed and remanded.*