### RILEY ALEXANDER v. THE STATE.

#### No. 7348.   Decided October 24, 1923.

**1.—Assault to Murder—Threats—General Reputation—Suspended Sentence.**

Where, upon trial of assault to murder, the defense was based in part upon threats by the alleged injured party, proof of the good reputation of said party as being peaceable and a law abiding citizen was admissible by the State; however, the isolated fact drawn out of defendant on cross-examination that he drew a gun upon his brother or was arrested on suspicion was inadmissible even under the plea of suspended sentence. Following Fountain v. State, 90 Texas Crim. Rep., 474, 241 S. W. Rep., 489 and other cases.

**2.—Same—Provoking Difficulty—Self-defense—Charge of Court.**

Where, upon trial of assault with intent to murder, the case was not one in which the right of self-defense should have been limited by a charge on provoking a difficulty, and while the court submitted the law of provoking the difficulty which was properly excepted to, the judgment must be reversed and the cause remanded

Appeal from the District Court of Lamar.   Tried below before the Honorable Ben H. Denton.

Appeal from a conviction of assault to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Ownby & Allen,* and *W. L. Hutchison,* for appellant.   On question of provoking the difficulty, McMahon v. State, 81 S. W. Rep., 296; McCandless v. State, 57 id., 673; Carlile v. State, 232 id., 821.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Lamar County of assault to murder, and his punishment fixed at two years in the penitentiary.

95 T. C.—32

The defense being based in part upon threats made by the alleged injured party, proof of the good reputation of said injured party as being a peaceable, law-abiding citizen became available to the State under Article 1143 of our Penal Code. See Sec. 2095, Branch's Ann. P. C. for authorities. The isolated fact drawn out of appellant on cross-examination that some three years before this shooting he went to his brother's home, appellant's brother George Alexander being the injured party, and on said occasion drew a gun on his brother and made him run, was admitted in testimony as stated in a bill of exceptions as affecting the right of appellant to a suspended sentence. Such testimony was not admissible for such purpose. Johnson v. State, 241 S. W. Rep. 484; Fountain v. State, 90 Texas Crim. Rep., 474, 241 S. W. Rep., 489. Nor was it provable against appellant that he had been arrested on suspicion on one occasion. See same authorities.

The learned trial judge submitted the law of provoking the difficulty, which was properly excepted to. Two theories arise from the conflicting evidence of the State and the defense. Appellant, Riley Alexander, had rented land lying across a public road from the residence of George Alexander, his brother. By some arrangement which does not appear George had a cow lot on the land rented by appellant. Inside this cow lot was a tree from which a dead limb had fallen. George had been feeding his cows in old tubs, and the limb from the tree and one of the tubs furnished the *casus belli* which led to the shooting. It is not clear just who began throwing the limb and the tub from one side of the fence to the other, but the presumption would seem to be that George began it because it was his tub and a limb from his tree, both of which would seem to properly belong inside the lot. On the morning in question the limb and the tub were on the outside of the lot and on the plowed ground of appellant. He was plowing in his field and as he approached the cow lot fence he says his mules got scared at the tub and that he threw the limb and tub over the fence into the cow lot and then plowed on away. George was working on a plow by his house and at once went over and threw the tub and the limb back over the fence on appellant's plowed ground. For the defense it was contended that George brought his Winchester rifle with him when he did this and that he also called to appellant and told him to go and get his gun and he would shoot his damn heart out. George admitted throwing the tub and the limb over the fence but denied taking his gun or using the language mentioned. Anyway, appellant left his team, went to his house, got his shotgun, loaded with small shot, and returned to the cow lot. George saw him coming through the field and admits that he got his Winchester. George testified that when appellant got up within about forty steps of

him, appellant called him and told him to come out from in front of his people. He says that when this remark was made appellant went behind the cow lot and to a point sixty-five or seventy steps from him from which point he emerged shooting at George. Some of the shot took effect in the pelvic region of George's body barely penetrating the skin. George did not shoot and appellant went away. There is some testimony about George having difficulty working his gun. According to the testimony of appellant when George came out with his Winchester and threw the tub and limb over the fence and told him to go and get his gun, he would shoot his damn heart out, he was afraid of George and knew he had to work there that morning, and that he got his gun and went to the cow lot for the purpose of having a conversation with George, and as he approached George began to curse him and advance toward him, holding his Winchester in a threatening manner. Appellant said that believing his life was in danger he then shot. We are not able to decide what the court meant by telling the jury that if appellant produced the occasion or brought about the conflict, or by any wrongful act of his, etc. If this referred to the throwing of the tub and the limb over the fence, it would appear that the responsibility for such conduct was that of George as well as of appellant. Appellant was on his own premises during all the time he had his gun in his possession and under all the authorities he had a right to arm himself and go where George was for the purpose of obtaining an explanation. It is equally clear that the conduct of appellant did not provoke an actual attack on the part of George, as no one claims that George used his gun. In our opinion if appellant, viewed from his standpoint at the time he fired his gun, reasonably believed that he was in danger of death or serious bodily injury at the hands of George, he would have had the right to shoot. On the other hand, if from the standpoint of appellant he was in no danger of death or serious bodily injury, he would not have had the right to shoot. We believe the case to be one in which the right of self-defense should not be limited by a charge on provoking a difficulty but in which the law of the case applicable to self-defense or otherwise should be submitted along well known lines.

For the errors mentioned, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*