JOHN D. GARRARD v. THE STATE.

No. 20185. Delivered March 22, 1939.
Rehearing Denied May 17, 1939.

76

The opinion states the case.

*Currie McCutcheon* and *Connie Renfro,* both of Dallas, and *Tom Garrard,* of Tahoka, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, Judge.

Conviction is for murder, punishment being eight years in the penitentiary.

Appellant was in the lumber business in Dallas, Texas. J. E. Stewart was a carpenter who had worked for appellant and had gone with him on the morning of the homicide to look at some "jobs" with a view of figuring on same. Paul Stewart (deceased) was a son of J. E. Stewart. The latter was an eye-witness to the killing. According to his testimony he was sit-

ting on the steps to the warehouse figuring on the "jobs" which they had looked at earlier in the morning when deceased came into the yard and began a conversation with witness. In a few minutes appellant walked out from his office and in an angry manner ordered deceased off the premises. The latter said "all right." Appellant then kicked deceased on the knee, and as the latter turned to leave the premises appellant shot him with a pistol. Witness testified that deceased had no weapon in his hands which were down by his side, and that neither he nor deceased made any effort to strike appellant or do him any injury whatever. The version of the homicide given by deceased's father was supported by the testimony of a brick mason who was on top of a nearby building working on a chimney. Appellant's theory, supported by the evidence, was as follows: On the morning of the homicide deceased had gone to the office of the Fidelity Union Abstract & Title Company seeking to collect five dollars for one Barnes. He was advised by Miss Naylor that they had no authority to pay it unless appellant directed them to do so. She telephoned appellant who told her not to pay it. This appeared to make deceased angry. He was advised by Miss Naylor to go and see appellant, saying she was sure he would settle it satisfactorily with deceased. The latter left, and said, "I will go right now, and see him, I will get Garrard." Miss Naylor then called appellant and told him deceased was angry and what he had said, and that he was coming to see appellant. The latter testified that he had information which led him to believe that deceased was a violent and dangerous man, and appellant was afraid deceased would carry out the threat that had been communicated; that he went out to where J. E. Stewart was sitting on the steps and asked him if he wanted to pay Barnes the five dollars and J. E. Stewart replied, "No;" that while appellant was talking to J. E. Stewart deceased walked up and said to his father, "You and Garrard are both g—— d—— fools; pay Barnes the five dollars and get rid of him." Appellant asked what business was it of deceased, who replied that he was making it his business and that appellant then told him he had better leave; that deceased had his hand in his pocket and his father had a knife in his hand and that both of them "closed in on him" and deceased struck at appellant four or five times and that appellant fired at deceased one time with a 25 automatic pistol; that he made no effort to fire more than once although the magazine was fully loaded. In rebuttal J. E. Stewart denied that he had any knife or that either he or his son made any attack on appellant.

From the condensed statement of the evidence given above it will be seen that an issue of fact was in the case which the jury settled in the State's favor.

The court gave a comprehensive charge on self-defense based on the acts and words of either deceased or his father or both of them, and instructions as to self-defense based on threats of deceased. We find no objections to the instructions, hence presumed they were satisfactory to appellant.

Bill of exception number ten presents the following complaint. Dan D. Rogers had testified that appellant's general reputation as a peaceable law-abiding citizen was good. He was then asked by appellant's counsel if he knew appellant's general reputation in the community where he lived for truth and veracity, and the bill certifies that had the witness been permitted to answer he would have said that he did know appellant's general reputation in respect to the matter last inquired about, and that it was good.

The State objected to an inquiry as to appellant's reputation for truth and veracity on the ground that it was not a proper subject for inquiry. The objection was sustained. At the time the question was asked appellant had not yet testified, although the court had been informed that he would testify. The trial judge explains the bill to the effect that when the State's objection was sustained counsel for appellant stated that he would not excuse any of the character witnesses and would later in the trial again offer the evidence; that after appellant had taken the witness stand counsel at no time re-offered evidence as to appellant's general reputation for truth and veracity, and that if it had been re-offered on the subject the court would then have determined whether appellant had been impeached, and whether the rejected evidence had become admissible. The ruling of the trial court was unquestionably correct. In Sec. 184, p. 115, Branch's Ann. Tex. P. C. the rule is stated as follows: "Proof of the general reputation of defendant or of any other witness for truth is not admissible where no attack has been made on the witness, but there is a mere contradiction between witnesses, or confusion in the statements of the witnesses." Many authorities are cited supporting the text, among them being Rushing v. State, 25 Tex. Cr. R. 607, 8 S. W. 807. To the same effect is the text of 18 Tex. Jur., p. 111, Sec. 53. See also Wisnoski v. State, 153 S. W. 316.

A large part of the statement of facts is taken up by testimony of many witnesses who gave evidence as to appellant's

good general reputation as a peaceable law abiding citizen. Apparently appellant sought to ask each witness about his general reputation for truth and veracity, and seventy-six bills of exception are brought forward presenting the same question disposed of in discussing bill of exception number ten.

Bill of exception number sixty reflects the following: During the development of appellant's defense he placed upon the witness stand Miss Naylor who testified substantially as heretofore related to a threat made by deceased towards appellant and the communication of such threat by her to appellant. On cross-examination the State elicited from the witness that in the afternoon after the homicide two investigators from the district attorney's office came to see her regarding what she knew about the case; that not knowing them she declined to talk to them, advising that she would tell the grand jury all she knew about it. She was directed by one of the officers to report to the grand jury the next morning; that prior to the visit of the investigators witness had talked to Mr. Renfro, one of appellant's attorneys. Witness did not go before the grand jury the next morning on account of illness, but did report to them the following day. She asserted on cross examination that she told the grand jury everything substantially as she had testified on the trial. The bill certifies that at no time did the State attempt to prove that Miss Naylor made any contradictory statements while testifying before the grand jury, nor did the State impeach the said witness, or attempt to prove by any witness anything contrary to her testimony. Appellant then called Mr. Renfro who was permitted to testify before the jury that he did not discuss with Miss Naylor what her testimony would be. Appellant then sought to prove by Mr. Renfro that as soon as he learned of appellant's arrest he went to the district attorney's office and talked to the assistant district attorney and made the following statement: "I. told him then that we had a clear case of communicated threats on which the defendant had acted and that I felt sure the Grand Jury would not indict him when that testimony was made known to them and I told them the name of the witness. I told them about Miss Naylor and I recall some of them asked me if I knew her and what about it; I told them I had known her people always and was dependable witness and that the Grand Jury would believe her and I didn't think that the Grand Jury would ever indict the man and that I would welcome an investigation, and they suggested that we wait and make the investigation, and I had men ready to make his bail and we waited; Mr. Dan Rogers and Mr. Boyd Keith and two

or three others were there waiting in District Attorney's office to make the bond. I was there before Mr. Patton went off to a luncheon engagement; he left me in the office and suggested that I talk to Mr. Priest; I waited there until he came back. It was before Mr. Patton left that I told the assistants there about Miss Naylor, reported her to them."

Upon objection from the State the foregoing proffered testimony was excluded. Appellant contends that he was entitled to the rejected evidence as supporting the witness Miss Naylor, and under the general rule stated in Branch's Ann. Tex. P. C., p. 62, Sec. 97, as follows: "Whatever material facts are introduced that tend to affect the issue, the other side has the right to deny, contradict or explain that testimony, showing its falsity, or breaking its force and effect in any legitimate way."

We have examined all of the authorities cited in support of the proposition, and while recognizing the principle announced we fail to see its application here. The trial court qualifies the bill as heretofore indicated by the statement that Miss Naylor was not impeached or contradicted by the State, neither was there any effort to do so. She needed no support. The proffered evidence does not purport to be a recital of any statement made by said witness to Renfro, but purely a recital by him of what he told the representatives of the district attorney, which included the expression of his high regard for Miss Naylor, and his opinion as to the effect of the communicated threat on the outcome of the case. It occurs to us that the trial judge correctly excluded the testimony sought from Mr. Renfro.

Finding no reversible error, it follows that the judgment must be affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant, in his motion for a rehearing, seriously contends that we erred in affirming the judgment in this case.

His main contention is that inasmuch as he had filed a plea for a suspension of sentence in the event of his conviction, he was entitled to prove his general reputation, not only as a peaceable and law-abiding citizen, but also his reputation for truth and veracity, etc.

The trial court restricted him in the proof under said plea to his general reputation for being a peaceable and law-abid-

ing citizen, to which he objected on the ground that it denied him the legal right to advise the jury not only that his general reputation for truth and veracity was good, but also the right to show that his general reputation as a consistent member of a particular religious denomination or secret society, etc., was good. He bases his contention on the ground that prior to 1913, the time when the law relative to the suspension of sentence was enacted, the rule of evidence restricted a defendant in his proof of character to the particular trait of character involved, but that when the suspended sentence law was enacted, the rule was changed; the bridle was taken off and the right to roam at will was granted.

We do not believe that his position is well founded. Art. 776, C. C. P., in dealing with the Suspended Sentence Law provides among other things that "In no case shall sentence be suspended except when the proof shall show and the jury shall find in their verdict that the defendant has never before been convicted of a felony in this or in any other State."

It occurs to us that under the language of the statute and the allegations necessary in the required plea, the only trait of character involved is that which shows the general reputation of the accused as a quiet, peaceable and law-abiding citizen. See Johnson v. State, 241 S. W., 484, 91 Tex. Crim. Rep., 582; Baker v. State, 87 Tex. Crim. Rep., 305, 221 S. W. 607; Wagley v. State, 87 Tex. Crim. Rep., 504, 224 S. W. 687.

The fact that the accused's general reputation for truth and veracity is good would not entitle him to a suspension of sentence. Consequently proof thereof would not be pertinent to the issue.

When the Legislature enacted the Suspended Sentence Law, it did so with knowledge of the rules of evidence in force and effect in this State, and the law was enacted in consonance therewith. Had they intended that a different rule should apply or that the rule should be extended or enlarged, they would have said so. The decision of a court of a foreign state which appellant cites in support of his contention does not appear to us to be the correct rule or to be in harmony with the rule in this State.

Believing the case was properly disposed of in our original opinion, the motion for a rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.