SETH HUGHES v. THE STATE.

No. 6762. Decided October 11, 1922.

**1.—Murder—Insult to Female Relative—Manslaughter—Charge of Court.**

Where there was no evidence raising the issue of manslaughter, save insults to a female relative, and the court instructed the jury that the provocation must arise at the time of the commission of the offense, and that

the passion must be sudden and not result from a former provocation, etc., and presented phases of adequate cause other than insults to a female relative, the same was reversible error. Following Squires v. State, 242 S. W. Rep., 1025.

**2.—Same—Argument of Counsel—Practice on Appeal.**
Where the argument of the district attorney seems to have been provoked by equally improper argument by counsel for the defendant, the same is not reviewed, as it is not likely to occur upon another trial.

Appeal from the District Court of Newton. Tried below before the Honorable V. H. Stark.

Appeal from a conviction of murder, penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*Wightman* and *Forse*, and *G. E. Richardson*, for appellant.—Cited Tucker v. State, 50 S. W. Rep., 711; Aiken v. State, 119 id., 863; Maxwell v. State, 56 id., 63.

*R. G. Storey*, Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Conviction is for murder. Punishment, seven years in the penitentiary. At the time of the homicide deceased and Clifford Davis were working at a sorghum mill. Appellant and Frank Love had gone to their traps early in the morning and returning. passed near where deceased and Clifford Davis were working. Deceased inquired if they had any luck to which appellant replied. No unpleasantness occurred at this time. Appellant and Love went on to appellant's house, skinned the animals they had caught, and remained there until about the middle of the afternoon. They then left to again visit their traps, or at least Love evidently thought such was the purpose of going. Appellant claims that immediately before he left home this last time his wife informed him of an insult offered her by deceased some three or four weeks prior thereto. The wife supports him in this. The State contended that this was an afterthought, a fabricated defense. The issue was clearly drawn. Appellant claimed he killed deceased because of the alleged insult, the State that he committed the act because he believed deceased had killed appellant's dog some few days before.

Appellant contends there is no evidence in the record raising the issue of manslaughter save insults to a female relative, and upon that ground excepted to the following portion of the charge as confusing and not applicable.

"By the expression 'Under the immediate influence of sudden passion' is meant, (1) That the provocation must arise at the time of the commission of the offense, and the passion is not the result altogether of a former provocation; and (2) The act must be directly

caused by the passion arising out of the provocation; and (3) The passion is either of the emotions of the mind known as anger, rage or sudden resentment or terror rendering it incapable of cool reflection."

The exception is not as far reaching as it might have been, but it called the attention of the trial judge to the matter complained of because in his explanation of the bill of exception bringing the matter forward he points out certain evidence which he thought presented phases of "adequate cause" other than insults to a female relative and therefore thought it was not improper to give the statutory definition of "sudden passion," which otherwise he concedes should have been eliminated from the charge.

We have searched the record and have been unable to find the evidence raising any issue of manslaughter except alleged insults to appellant's wife. When considered in its entirety we are unable to agree that the matters specifically pointed out in the explanation to the bill do so. Outside of accused there were only two eyewitnesses. Love says when they reached the mill on the afternoon trip that appellant asked deceased "something or other about some beer, and he told him he hadn't saved much, didn't have any vessels to put it in. I did not hear anything else between them. I did not hear any other conversation other than what I have told the jury about the beer. There was nothing else said between them that I heard." This witness then began talking to Clifford Davis, and was not looking directly at the parties when the gun fired. Love does not intimate that the conversation about the beer was other than friendly. He does say appellant had been in a good humor all day. Clifford Davis, the other witness present, says that when appellant and Love came up,

"They just commenced talking about some beer, something like that. I think Mr. Davis and Mr. Hughes probably spoke; then Mr. Hughes, I think, asked him about some beer, and Mr. Davis told him he didn't have much, and that he would have saved more if he had had the vessels, but he hadn't had the vessels. I don't think they talked any more; I wouldn't be real positive, but I don't think there was any more words passed between them. Me and Mr. Hughes and Mr. Love talked a little bit. I mean myself and the defendant in this case and Love talked a little bit. After that Mr. Davis came around. He had boiled down the syrup, boiled down what was in the kettle, and was going to dip up some more juice, and Mr. Davis stooped down and Mr. Hughes shot him. I saw Mr. Hughes at the time he shot Mr. Davis. The load took effect on the left side. He shot Mr. Davis with a shot-gun. There was no words spoken between either of them at the time or just preceding the firing of that gun. Mr. Davis had a bucket in his hand at the time."

After the gun fired this witness caught it, and appellant requested him to turn it loose, and said, pointing at deceased, "he came to my house the Saturday night before and killed my dog."

This witness further says:

"I would think that the conversation that took place just preceding the shooting between Mr. Davis and Mr. Hughes about which I have testified was a friendly conversation. Up to that time, I knew that Mr. Hughes and Mr. Davis didn't get along very well,—didn't think much of one another, but as for anything being up between them at that time, I didn't know—only I had heard about the dog being killed. Of my own knowledge, I don't know who killed the dog. They appeared to be friendly when they were talking about the beer."

We have copied all the evidence relative to the conversation about the beer as it was upon this the court thought other phases of manslaughter arose. We have not been able to reach the conclusion that such is the case. This conversation was apparently friendly, and nothing else was said or done at the time of the homicide raising the issue of manslaughter under the general provisions of the statute the giving of which in the charge was objected to. Having reached this conclusion we deem it unnecessary to give at length our reasons for holding the charge improper. A very full discussion with many authorities noted, will be found in the recent case of Squires v. State, 92 Texas Crim. Rep., 160. That case was first affirmed, but upon rehearing was reversed, and the State's motion for rehearing overruled. It would be unprofitable to attempt to supplement what was said in that case upon the question before us. Under the evidence in the instant case we believe the general statement of the law should have been confined to an appropriate charge where the issue of manslaughter is based alone upon insults to a female relative, and the application of the law to the facts have been confined to that single issue.

Complaint is directed at some argument of the district attorney. It seems to have been provoked by equally improper argument by counsel for accused. We do not discuss it. Neither will likely occur upon a retrial.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*