## J. G. SHIRLEY V. THE STATE.

No. 6909.   Decided February 28, 1923.

**1.—Murder—Evidence—Bill of Exceptions.**

Where there was no necessity for the bills of exception to have been presented in a question and answer form, same will not be considered on appeal. Following Jetty v. State, 90 Texas Crim. Rep., 346, and other cases.

**2.—Same—Evidence—Motive—Impeaching Testimony—Original Testimony.**

Where the State was combatting the proof of defendant's alleged reason for the killing, and insisting that it came about because of the trouble between the children· of the parties, this testimony was of an original character to prove motive and not to impeach the testimony of a defendant's witness, and therefore admissible.

**3.—Same—Evidence—Self-Defense.**

Where the testimony with reference to deceased coming into the store, etc, in no way impinged on the plea of self-defense, and could not have affected it under any phase of the evidence, there was no error.

**4.—Same—Evidence—Motive.**

There was no error in admitting testimony to the effect that on an occasion shortly before the deceased was killed, his and defendant's children were fussing and that defendant told his children to pick up a rock and knock the other children in the head.

**5.—Same—Suspended. Sentence—General Reputation.**

Where. defendant had filed his application for suspended sentence, there was no error in admitting testimony to show that while he was living in another place his general reputation was bad, as a peaceful law-abiding citizen. Following Overby v. State, 92 Texas Crim. Rep., 172, 242 S. W. Rep., 213, and other cases.

**6.—Same—Manslaughter—Adequate Cause—Insult to Female Relative.**

Where defendant claimed that the sole cause of his going to the store where the killing occurred was on account of the report his wife had made of the conduct of deceased, and waiving the question of self-defense, the issue of manslaughter should have been clearly submitted upon that state of facts, untrammeled by its connection with other conditions, acts, or conduct on the part of the deceased, and the court's charge not having done so, the same is reversible error. Following Squyres v. State, 242 S. W. Rep., 1024.

Appeal from the Criminal District Court of Tarrant. Tried below before the Honorable Geo. E. Hosey.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*McLean, Scott & McLean,* for appellant.—Cited Jones v. State, 26 S. W. Rep., 1082, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, and *Jesse M. Brown,* Criminal District Attorney, for the State.—On question of motive:—Kemp v. State, 28 Texas Crim. App., 522; Morrison v. State, 40 Texas Crim Rep., 492; Dane v. State, 164 S. W. Rep., 380; Muldrew 1. State, 166 id., 159.

HAWKINS, Judge.—Appellant was tried under an indictment charging him with the murder of one Robert Thompson; conviction followed with punishment assessed at ten years confinement in the penitentiary.

Shirley and Thompson lived across the street from each other in the city of Fort Worth. Late in the afternoon of the day upon which the homicide occurred Thompson left his home and went to a little store located nearby, passed through the store to the rear and asked for some meat. Thompson had not been there more than a minute and was standing by the counter waiting for the butcher to cut the meat for him, when Shirley walked into the store and approaching Thompson said, "You s—n of a b—h" and immediately stabbed him with a knife. They then clinched and Thompson secured a pistol which was lying on the counter near the cash register. He asked Shirley to quit, when the latter told him to put down the gun. The foregoing is substantially the State's testimony, which was further to the effect that Thompson made no effort to secure the pistol until after he had been stabbed. Before giving substantially the testimony from the defendant's standpoint, we may state that the relations between the children of the two men were not pleasant. They had been quarreling and fussing, and it appears that rocks and clods had been thrown backward and forward among them. The substance of Mrs. Shirley's testimony is that early in the afternoon of the killing, while her husband was away from home, she heard some disturbance in the yard and heard deceased tell his little boy not to throw clods but "throw rocks and knock hell out of him;" that she went to the door and called her children in the house; that about an hour and a half after this she went into her yard; that deceased was in his cow shed across the street; that he looked in her direction and exposed his person and shook it at her; that she returned to the house and telephoned to the officers; that later in the day she went to her door and that deceased again from the same cow shed exposed his person to her and made vulgar motions. It was a sharply contested issue between the State and appellant as to whether it would have been possible for Mrs. Shirley to have seen deceased as she lcoated him and herself except from the shoulders up. Mrs. Shirley continued her testimony to the effect that when her husband returned home she immediately informed him of deceased's conduct, at which he became very much disturbed and did not eat any supper.

Appellant's testimony in substance was that after his wife informed

him of the insulting conduct of deceased, which he believed, but thought surely deceased must have been intoxicated or under the influence of dope of some kind; that he saw deceased leave his home and go towards the store; that he followed him to the store hoping he would find out that deceased was intoxicated and did not realize what he had done. He claimed that immediately when he walked into the store deceased grabbed the pistol and whirled towards him with it and that he grabbed the pistol and then stabbed deceased in self-defense.

It will be seen from the foregoing narration of the defensive testimony that from his standpoint appellant raised the issues of self-defense, and of manslaughter predicated upon a killing at the first meeting after being informed of insults to his wife. The State's theory was that no such insulting conduct as claimed by Mrs. Shirley occurred, but that such claim was a fabricated defense, and that the real cause of the killing was because appellant was angry at deceased on account of the trouble between the children.

. Bill of Exceptions No. 1 consists of ten pages of questions and answers, and Bill No. 10 of twenty-seven pages in the same condition. We fail to observe any necessity for the bills to have been presented in that form, and must decline to consider them. Jetty v. State, 90 Texas Crim. Rep., 346, 235 S. W. Rep., 539; Palmer v. State, 92 Texas Crim. Rep., 640, 245 S. W. Rep., 238; Reese v. State (No. 6806, opinion Nov. 29, 1922); Hickman v. State, (No. 6890, opinion Dec. 20, 1922.) Many authorities are collated in the two opinions last cited.

Bills Nos. 6 and 7 are also in questions and answers, but as the complaints made in each is because of an alleged insufficient predicate to admit impeaching testimony, there appears to be some excuse for the form in which they appear in the record. The objection was general but we assume it was on the ground that the questions to appellant had not fixed the place or time of statements attributed to him. Both bills proceed on the theory that the evidence objected to was purely impeaching and therefore not receivable in the absence of strict compliance with the rule as to laying the predicate therefor. In this we think appellant is in error. The State was combatting the truth of appellant's alleged reason for the killing, and insisting it came about because of the trouble between the children. The testimony of the two witnesses was admissible as original evidence to show appellant's state of mind as bearing on a motive for the killing, and therefore the strict rule as to purely impeaching evidence does not apply. It was admissible without a predicate.

Appellant objected (Bill No. 2) to witness Hays testifying that when deceased came into the store where the killing occurred he "ordered some meat for his lunch that night" because not made in appellant's presence. This in no way impinged on the self-defense plea, and could not have affected it under any phase of the evidence. (See collated authorities under Sec. 1930, p. 1080, Branch's Ann. P. C.)

The court committed no error in permitting Mrs. Thornberg to testify (Bill No. 8) that on an occasion shortly before Thompson was killed, his and appellant's children were fussing, and she heard appellant tell his children to pick up a rock and knock the Thompson children in the head. It was pertinent to the State's contention that the killing was because of the children's quarrel and not the claimed insult to the wife.

No error is presented in Bill of Exceptions No. 9. Appellant had filed an application for suspended sentence. He had formerly lived at Kingsland in Llano County. The State could properly show that while there his general reputation as a peaceable law-abiding citizen was bad. Overby v. State, 92 Texas Crim. Rep., 172, 242 S. W. Rep., 213; Palmer v. State, 92 Texas Crim. Rep., 470, 245 S. W. Rep., 238; Johnson v. State, 91 Texas Crim. Rep., 582, 241 S. W. Rep., 484.

The court charged that manslaughter was voluntary homicide committed under the immediate influence of a sudden passion arising from an adequate cause but neither justified nor excused by law; further, that insulting words or conduct of the person killed toward a female relation of the party doing the killing would be deemed under the law adequate cause if the killing took place immediately upon the happening of the insulting conduct or so soon thereafter as the party killing might meet with the party killed after having been informed thereof; further, that any condition or circumstance which was capable of creating or did create sudden passion rendering the mind incapable of cool reflection, was in law deemed adequate cause, and that where there were several causes to arouse passion, although no one might constitute an adequate cause, yet all of the causes combined might be sufficient to do so. He further instructed that in determining whether there was a provocation, and whether, if so, it was adequate cause under the law, the jury would look to all the facts and circumstances in evidence. The foregoing were general charges relative to the law of manslaughter.

In applying the law to the facts the court charged as follows:

"Now if you find and believe from the evidence beyond a reasonable doubt that the defendant cut and stabbed the deceased with a knife and you further believe that at the time of so doing his mind was laboring under such a degree of anger, rage, sudden resentment or terror as to render it incapable of cool reflection produced by any or all of the acts of the deceased toward the defendant, or by any words, coupled with the acts of the deceased, prior to and at the time of the killing, or from either the words spoken or acts done by the deceased, taken together or separately, and in connection with all of the other facts in evidence, constituted an adequate cause as same has been hereinbefore defined and that while his mind was in such condition he cut and stabbed the deceased from the effects of which the deceased did then and there die then you will find the defendant guilty of the offense

of manslaughter and assess his punishment at confinement in the state penitentiary for any term of years not less than two nor more than five in your discretion."

Among other objections filed to the charge we find the following:

"Because the charge does not properly define the law of manslaughter, in that the same is a general charge and is not the law applicable to the facts peculiar to this case as shown by the record, for that the jury is not instructed that the exposition and display of deceased's person to the wife of the defendant, such as the testimony shows the deceased's acts to have been, when said conduct is related to and believed by the defendant were and are such as would reduce the offense of murder to that of manslaughter in the event the homicide occurred upon the first meeting of the defendant and the deceased."

In addition to the foregoing exception appellant asked two special charges which were defective in that they failed to take into account the state of appellant's mind at the time of the killing, but were to the effect that although the jury might not believe that deceased actually used insulting conduct towards appellant's wife, yet if they believed she reported to appellant that he had done so, and appellant believed it was true and killed deceased upon the first meeting after having been so informed, he could not be convicted of a higher offense than manslaughter. While these special charges, in the form requested were properly refused, yet we believe in connection with the exception to the charge hereinbefore quoted they were sufficient to call the court's attention specifically to the complaint being directed at the main charge

Appellant had a right to have his theory of manslaughter submitted to the jury from his standpoint. He claimed that the sole cause of him going to the store where the killing occurred was on account of the report his wife had made of the conduct of deceased, and waiving the question of self-defense, the issue of manslaughter should have been clearly submitted upon that state of facts untrammeled by its connection with other conditions, acts or conduct on the part of deceased. It will be observed that in applying the law the court told the jury if all or any of the matters embraced were adequate cause, then appellant should be convicted only of manslaughter. He was entitled in the application of the law to a charge clearly and specifically telling the jury that if appellant's wife had informed him of insulting conduct on the part of deceased towards her and believed the same to be true, and that the killing took place at the first meeting of the parties after appellant was so informed, and they believed the mind of appellant was laboring under such passion as to render it incapable of cool reflection, and that such passion arose from and grew out of the reported insulting conduct and caused the act of the accused and appellant was not acting in self-defense, then a conviction could not be had for a higher grade of homicide than manslaughter. If the court

believed from all the facts and circumstances in evidence it was proper or necessary to do so, he might have added a charge upon manslaughter based upon general conditions such as were incorporated in his main charge. A charge similar to the one given in this case was discussed in Squyres v. State, 92 Texas Crim. Rep., 160, 242 S. W. Rep., 1024. Upon first consideration the judgment therein was affirmed, but later upon motion for rehearing a reversal followed based upon the proposition heretofore discussed. To the same effect will be found Hughes v. State, 92 Texas Crim. Rep., 650, 244 S. W. Rep., 151. We do not discuss at length the authorities upon the point at issue but many of them will be found collated in the two opinions cited.

For the error pointed out, the judgment must be reversed and the cause remanded.

*Reversed an dremanded.*