## JOHNNIE WATERS v. THE STATE.

### No. 6548. Decided February 1, 1922.

### Rehearing Granted May 3, 1922.

**1.—Murder—Manslaughter—Special Venire—Name of Defendant.**

Where the writ of venire served upon the defendant showed that the style of the case ran "The State of Texas v. Johnnie Waters," and that on the inside defendant's name was spelled "Watters,' the motion to quash the venire was properly overruled.

**2.—Same—Continuance—Cumulative Testimony.**

Where the application for continuance showed that it was the second one, and that the absent testimony was only cumulative the application was correctly overruled.

**3.—Same—Evidence—Opinion of Witness.**

Where, upon trial of murder and a conviction of manslaughter, objection to the testimony of the mother of deceased was raised, because she was permitted to testify that when her son was brought home he was unconscious, and that he could neither see, speak, nor recognize a person, there was no error in overruling the objection.

**4.—Same—Evidence—Cause of Death—Cross-Examination.**

Where it was contended by the defendant that death occurred from other causes than the blow inflicted, there was no error in admitting testimony of the mother of deceased that she did whatever the doctors told her to do for her boy; the defendant being offered full opportunity for cross-examination.

**5.—Same—Evidence—Animus of Defendant—Neglect.**

Where, upon trial of murder and conviction of manslaughter, there was no error in allowing the witness to testify that defendant did nothing to the deceased after he was injured, and to ask defendant himself if he did anything to aid deceased. This was admissible as affecting *animus* and also on the question of neglect after injury.

**6.—Same—Evidence—Effect of Ride.**

Where it appeared from the record that the witness for the defense fully testified as to the effect of an automobile ride upon the deceased, there was no error in overruling the complaint, that the witness was not allowed to answer.

**7.—Same—Evidence—Expert Testimony.**

Upon trial of murder there was no error in permitting a physician to testify that he had been present at the operation upon the head of the de-

ceased, etc., and to give his opinion that death resulted from the shock caused by a blow on the head.

### 8.—Same—Evidence—Bill of Exceptions.

Where the bill of exceptions failed to show the surroundings and setting of the question. as to whether defendant was not an ordinary negro, there was no reversible error.

### 9.—Same—Evidence—General Reputation—Cross-Examination.

The State has the right upon cross-examination of witnesses as to the good character of the accused, and where the State asked certain questions with reference thereto, but were afterwards withdrawn and the jury instructed not to consider, there was no reversible error.

### 10.—Same—Charge of Court—Bill of Exceptions.

Where appellant had many bills of exceptions, embodying his objections to the charge of the court, but the same presented no reversible error, there was no error.

### 11.—Same—Requested Charges.

Where many of the requested charges of the defendant were mere repetitions of each other and of charges given by the court. and of matters contained in and covered by the main charge of the court, there was no error in refusing them.

### 12.—Same—Bill of Exceptions.

A bill of exceptions which enumerates twelve different grounds of complaint does not come within the rule, especially where they are not properly certified by the trial judge.

### 13.—Same—Practice in Trial Court—Reprimanding Witness.

There was no reversible error in the court's conduct to warn a witness against the violation of his orders in repeating hearsay testimony.

### 14.—Argument of Counsel—Practice in Trial Court.

While the many exceptions to the argument of state's counsel in all but one instance present no reversible error, prosecuting counsel are again admonished that in the trial of causes involving life and liberty to the citizen, arguments and matters of procedure should all be directed to aid in the attainment of justice.

### 15.—Same—General Reputation—Suspended Sentence—Isolated Acts of Misconduct.

Where, upon trial of murder and a conviction of manslaughter, defendant had filed an application for suspended sentence, and introduced proof as to his general good reputation as a peaceable, law-abiding citizen, and while testifying as a witness in his own behalf, on cross-examination was asked by the State's counsel, "Didn't you wilfully run over a girl down near Starville one night"?, to which the witness answered in the negative, over his objection, and asked the court to withdraw such testimony, which he did verbally, but the district attorney replied, "We have got a basis for them," to which remark the defendant objected, and the record showed that the

complaint of defendant, of the State's attorney's conduct was a studied effort to prejudice the jury, etc., held, that the same was reversible error; besides, an isolated act of misconduct on the part of defendant does not prove general reputation. Following Johnson v. State, recently decided.

#### 16.—Same—Special Venire—Practice in Trial Court—Verbal Charge.

Where it appeared on appeal that the special venire from which a jury was to be selected to try the defendant was present in the courtroom before entering upon the trial of the instant case, the court gave certain verbal instructions to the jury relative to the suspended sentence law, embarking upon a general discussion of said law, that the same had been abused, etc., the same was reversible error. Following McMahan v. State, 61 Texas Crim. Rep., 489, and other cases.

Appeal from the District Court of Smith. Tried below before the Honorable J. R. Warren.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Butler, Price & Maynor,* for appellant.—On question of Oral instruction to jury before trial, etc.: Eason v. State, 232 S. W. Rep., 300; Dean v. State, 124 id., 924; Scott v. State, 160 id., 960; and cases cited in opinion.

On question of general reputation: McIntosh v. State, 213 S. W. Rep., 659; Roach v. State, 232 id., 504; Bullington v. State, 180 id., 679; and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Smith County of manslaughter, and his punishment fixed at confinement in the penitentiary for a period of five years.

The homicide occurred at a baseball game at which a dispute arose between appellant and deceased, the immediate cause being a dispute over a pocket-knife. After a hot debate over the ownership of the knife deceased started to walk away with it and appellant grabbed a baseball bat and struck deceased upon the head with it, the blow causing deceased to stagger and fall, and later become unconscious. He was still later removed from his home some miles across the country in and automobile to a sanitarium and an operation performed upon his head, which disclosed that the skull had been crushed by said blow, and the physicians testified that his death was thereby produced. There were various theories of the defense, one of them being self-defense, and another that the death of deceased resulted from neglect and other causes intervening between the blow and death.

Appellant's first bill of exceptions was to the refusal of the trial court to quash the venire, the ground of the motion being that ap-

pellant's name was Waters and the venire was issued in the name of Walters. The court directs that the original writ be sent up with the transcript, and it was done. An examination of same shows that it is endorsed, The State of Texas vs. Johnnie Waters, and that on the inside appellant's name was spelled Watters. We think the motion correctly overruled.

The second bill of exceptions was to certain remarks of the court, called by appellant verbal charges to the jury. Nothing in said remarks relative to the suspended sentence law, appears to militate against the rights of appellant. The court in effect told the jury that the suspended sentence law was made for the benefit of young men and first offenders, but that it should be given to any man who was entitled to it. Appellant's proof in the case seemed to show without any contradiction that he had never been convicted of a felony, and that his life had been as free from blame as that of any ordinary citizen. The remarks are set out at length. It is shown that the remarks were made on Monday morning when the jury for the week and the venire in this case were all present in the court room. The remarks of the trial court were entirely appropriate. If juries were cautioned before impaneled, as was done in this case, against deciding cases by lot and thoughtless and careless separation while impaneled, and discussing the failure of the defendant to testify, it might obviate reversals of cases for such reasons. There is nothing in appellant's complaint.

A bill of exceptions was taken to the court's refusal of a continuance. The same facts stated as expectant from the absent witness were given in evidence by other witnesses. It was shown that the continuance sought was a second one. Same should not have been granted for cumulative testimony.

Several bills relate to the objection of the testimony of the mother of deceased. She said that when brought home he was unconscious. Over objection it appears that she further stated that he could neither see, speak nor recognize persons. This would appear to us to be reasonably true of every person who was unconscious. No harm was done by permitting the witness to make this statement. The other complaints of the testimony of this witness are, that she said that she did what she could for her boy; that she did whatever the doctors told her to do for him; that she did not leave undone anything she was told to do for him. As above stated, an issue in the case was whether the death of the deceased was the result of negligence or of some other cause save that of the blow inflicted upon him by appellant. It was proper to permit the mother, who was with him and waited upon him from the time of injury until death, to testify to the matters mentioned above. Appellant was accorded full opportunity to cross-examine her as to all of the details as to her care and attention to deceased, and what was done and not done for him during the time after his injury.

By bill of exceptions complaint is made that a witness was allowed to state that appellant did nothing to aid the deceased after he was injured, and that appellant himself was asked if he did anything to aid deceased after he was injured. This testimony would be admissible as affecting the animus and state of mind of appellant toward deceased, and as further reflecting the fact that appellant was not in position to complain if deceased was neglected and suffered therefrom, after the injury.

Complaint is made that Dr. Bussey was not allowed to answer a question of appellant the effect of which was to show that the tendency of an automobile ride a long distance across the country would be to injure deceased. The court qualifies the bill by referring to the statement of facts, from which it appears that Dr. Bussey testified fully in regard to the subject matter of this inquiry.

Dr. Northcutt, a practicing physician, was present at the operation upon the head of deceased and administered the ether to him; he saw the bone removed from the head of deceased, and gave it as his opinion that death resulted from a shock caused by a blow on the head. The witness was an expert and the testimony was entirely proper. The issue of whether death resulted from the blow or other causes was in the case.

Various bills complain of the action of the State in asking some of appellant's witnesses relative to his being charged with a crime in Navarro County. The State has the right upon cross-examination of witnesses as to the good character of the accused, to refer to instances of misconduct on his part as tending to rebut his possession of such character. This was done in the instant case and inquiry of of such witnesses, of appellant's connection with a crime in Navarro County was made. It was objected to, and the State informed the court that it expected to have witnesses from Navarro County to support before the jury the matter inquired about. As the case drew to a close and said witnesses had not appeared, the State asked the court below to postpone the case until the next day in order to give them opportunity to get said witnesses. This the trial court refused to do, and then instructed the jury not to consider as against appellant any questions asked by the State relative to any crime committed by appellant in Navarro County. We think this entirely negatived the possibility of any injury.

Complaint is made that a witness was asked by the State, referring to appellant, if he was not just an ordinary negro. The possible injury of a question such as this would seem so slight as not to merit being the subject of a bill of exceptions. The surroundings and the settings of the question do not appear. We cannot know why the State desired to ask such a question, but are wholly unable to see any possible injury.

A number of witnesses testified for appellant that his reputation for being a peaceable law-abiding citizen was good, and that they had

never known of his being accused of crime. Appellant had filed an application for a suspended sentence. The State asked appellant upon cross-examination if it was not true that on one occasion while riding horseback he ran over a girl near Starville. The bill of exceptions is wholly defective in that it fails to set forth the connection or surroundings which would show the question to be immaterial. The appellant answered the question in the negative, and the objection of appellant seems to be to the question as asked. There might be many circumstances arising in which the evidence could be material. In order for us to conclude that injury results and error was committed, it is necessary that sufficient facts be stated in the bill from which we may know that error was committed and injury done.

Appellant has six bills of exception embodying the exceptions taken by him to the charge of the trial court. We have carefully examined each of said bills, which are too long to be set out in extenso, and which do not embody any matter affecting any settled rule of practice; and we conclude that none of said bills presents any error.

A number of special charges were asked by appellant, each of which has received our careful attention. Many of them are repetitions of each other and of other special charges given by the court and of matters contained in and covered by the main charge of the court. The charge of the court as given and as amplified by eleven special charges given at the request of appellant seems to us to fully present every theory of the case supported by any evidence, in a clear and fair way, and we are unable to perceive any error committed by the trial court in the refusal of any of said charges. Many of said charges relate to things claimed by appellant to be adequate cause to reduce a killing to manslaughter, and the manner and form in which charges relative to manslaughter should be worded, and to issues relevant only in determining whether a given homicide be manslaughter; all of which questions pass out in view of the fact that the jury concluded that manslaughter was the offense of which appellant was guilty and he was so adjudged. Many of said special charges are on the weight of the evidence, enumerating various and sundry facts, in which the court is asked to instruct the jury what would constitute sufficient ground for a killing in self-defense.

There are forty-four bills of exception contained in this record, and thirty-five special charges asked on behalf of appellant. It is manifest that this court cannot so extend its opinion as to discuss each of said bills of exception and special charges. If this court was of opinion that the trial was in any material respect unfair, or that any injury had resulted to appellant from any action of the lower court or jury, or that any of said special charges or bills of exception contained matters, the discussion of which would shed light upon any rule of procedure or question of law, this court would discuss the same and set it forth in its opinion, but where the contrary appears to us, we can see no benefit to the appellant or to the profession in an ex-

tended discussion of the errors complained of either in the refusal of special charges or in the overruling or sustaining of objections to evidence.

In his 42nd bill of exceptions appellant enumerates twelve different grounds of complaint. A bill of exceptions of this character does not come within the rules, and the trial court approves same with the statement that the greater part of the matters above presented are presented elsewhere in separate bills, and that he does not certify that the questions or remarks were for the purposes stated.

Appellant has a bill of exceptions to what he calls the misconduct of the court in reprimanding a witness who persisted in repeating certain hearsay testimony after being told by the court not to state it again. It was shown that the court stopped the witness and said that he had warned him twice before and was going to fine him if he did it again. We do not think it error for the court to warn a witness against a violation of his orders, nor to state to the witness if he continues that he would be compelled to fine him.

Appellant's 44th bill of exceptions is a repetition of the ten grounds of his exception to the court's charge, which matters have been made the subject of separate bills of exception theretofore appearing in the record.

In the lengthy and able brief of counsel for the appellant much complaint is made of unfair practices on the part of the State's attorney in the asking of questions and the making of sidebar remarks claimed by appellant to be calculated to prejudice the jury against him and to belittle the objections and complaints made on behalf of appellant. All of such matters that are legitimately complained of by bills of exception have received our attention, and, in so far as we deemed same necessary, have been discussed in the opinion. We do not conclude that any of said matters, or all of them in the instant case, amount to enough to justify a reversal; but we wish again to urge upon State's attorneys that there is no need for the attorneys for the people to resort to such methods, to any extent. In the trial of causes involving life and liberty to the citizen, whatever be his standing or estate, whether he be of high or low degree, the procedure and result involve the most serious matters. Such trials are not to be made mere opportunities for verbal sword play between competing counsel, nor should the fair judgment of the jury be affected or influenced by aught save the consideration of the testimony and its effect, under the law as presented. Arguments and matters of procedure, having any other effect than to aid in the attainment of justice, should be omitted.

Finding no reversible error in this record, the judgment of the lower court will be affirmed.

*Affirmed.*

ON REHEARING.

May 3, 1922.

HAWKINS, JUDGE.—Appellant had filed an application for suspended sentence, and introduced proof as to his general reputation as a peaceable, law-abiding citizen. While testifying as a witness in his own behalf the following questions on cross-examination were propounded to him by the district attorney:

Q. "You run over a girl down here near Starville?"

A. "No, sir."

Q. "On a horse?"

A. "No, sir."

Appellant objected on the ground that there was no violation of the law claimed, and that it was an effort on the part of the district attorney to inflame the minds of the jury against appellant and that the State had no evidence to support such questions or to follow them up. The court overruled the objection and the district attorney then followed his examination with this question:

Q. "Didn't you wilfully run over a girl down near Starville one night."

A. "No, sir."

Q. "Her name was Pinkston?"

A. "No, sir."

The defendant continued to object to such questions on the grounds as theretofore stated by him, and asked the court to withdraw the testimony from the jury, in reply to which the district attorney told the court to "Go ahead and withdraw it." The court in response to that remark from the district attorney said "Well, don't ask those questions unless you have a basis for them," to which the district attorney replied, "We have got a basis for them." Exception was then taken by appellant to the last remark of the district attorney on the ground that there was no witness present who would testify that defendant ran over a girl, and that the State was undertaking through the district attorney to prejudice the rights of defendant, and that he had no witnesses by which he could have followed up such inquiry. The court instructed the jury not to consider the questions propounded by the district attorney, but complaint is made of his conduct as being a studied effort calculated and intended to prejudice the jury against appellant's interest. Ordinarily where a question is propounded and answered in the negative we are not inclined to hold the mere asking of the question as error, but under the facts of this case as we gather them from the record we believe the conduct of the district attorney in the respect complained about should not be approved. He not only asked improper questions, but asserted the existence of facts hurtful to appellant. If he had a witness present by whom he could have proved that appellant ran over the girl, such evidence could have been tendered by the State only upon the issue of suspended sentence, and

under recent holdings of this court it would have been inadmissible for that purpose, as being an isolated act of misconduct to which the State could not resort as original evidence to prove general reputation. See Johnson v. State, No. 6422 (this day decided) ; Wagley v. State, 87 Texas Crim. Rep., 504, 224 S. W. Rep., 687; Moore v. State, 237 S. W. Rep., 932; Fountain v. State, (opinion December 21, 1921) ; Williamson v. State, 74 Texas Crim. Rep., 289; Baker v. State, 87 Texas Crim. Rep., 305, 221 S. W. Rep., 607. A misapprehension seems to have arisen with reference to the extent to which the State might go in proving specific acts of misconduct where the issue of suspended sentence arose and we have attempted to clear up this confusion by our opinions in the cases referred to. The general rule, as stated in the Johnson case (supra) may be stated as follows:

"When accused undertakes to support, or the State to attack, his general reputation, it must be done in the same manner, be governed by the same rules, and subject to the same exceptions, where the suspended sentence is involved as in other cases," and specifically holding that the State can not introduce evidence of specific acts of misconduct as original evidence on the issue of accused's general reputation. The questions propounded by counsel for the State in the instant case were improper and even had they elicited affirmative responses the evidence would have been inadmissible. We are unable to say to what extent such conduct may have influenced the jury in assessing the maximum penalty for the offense of manslaughter, and denying the suspended sentence.

In the light of the motion for rehearing we have re-examined appellant's bill of exception No. 2 in which he complains of certain conduct of the court. It appears from the bill that the special venire from which a jury was to be selected to try appellant was present on Monday morning in the court room that it was the custom of the judge on Monday morning before entering upon the trial of any case to give certain instructions to the jury relative to their duty as jurors. He advised them: first, that they must be careful and not separate but must remain together after they were taken on the jury; second, that the law prohibited the arriving at verdicts by lot; third, that hung juries were undesirable and mistrials expensive, but that he would not desire any juror to waive his conscientious belief about any case, but that the law required that they discuss the matters with each other and arrive at a verdict if possible; fourth, he instructed them generally that they should not comment on the failure of any defendant to testify and that attorneys were not permited to allude to the same in argument; he then proceeded, fifth, as follows:

"Next, I want to call your attention to the Suspended Sentence law. There has been quite a good deal of agitation for the repeal of this law, and perhaps it has been abused in a great many instances. In my judgment, this is a good law where properly applied. It was never intended to be used or made a vehicle to turn real criminals

loose, who deliberately violated the law, and just as sure as the juries use this law recklessly, they will necessitate its repeal. I will illustrate it this way: it was intended to apply to young men and first offenders and to young men who accidentally got into trouble, who it appears, are not hardened criminals. However, the law does not say that this shall apply only to young men. There are cases where it would apply to old men. In all cases the jury are the sole judges as to whether the sentence be suspended.''

To that portion of the general observations to the jury which are statutory in their nature, such as directing them not to comment on the failure of any defendant to testify, and admonishing them that they should not separate, we find no serious objections, because such matters might with propriety be embraced in the written charge if the trial judge thought it necessary to so instruct them. Under our system of procedure however, we seriously question the propriety of the judge at any time embarking upon a general discussion of any law which would be improper for him to embrace in a charge relative to the particular case on trial. It may be that the judge was of opinion that the suspended sentence law had been abused in many cases, but we believe he certainly stepped beyond the realms of propriety when he told the jury that ''just as sure as the juries use this law recklessly, they will necessitate its repeal.'' He could not in any more definite way have given the jurors and veniremen present to understand that in his judgment extreme care should be exercised in extending the benefit of the law to any accused upon trial. Neither was it the province of the court to tell the jury that ''the law was meant to apply to young men and first offenders and those who accidentally got into trouble.'' It is true he does tell them that the law does not say in terms that it shall apply only to young men, but he in effect told them in unmistakable language that in his judgment it was the purpose of the law not to extend its clemency to any except young men and those who might accidentally get into trouble. But the very terms of the suspended sentence law itself, in its exclusion and inclusion of the character of cases to which it does apply, it is shown that such construction of the law is too restrictive. It can hardly be understood how one who calmly plans the burglary of a house or the theft of property, and who deliberately sets about the accomplishment of such offenses, can be said to have accidentally committed the same; yet the law applies to them. Appellant filed an application for suspended sentence. Proof was made that he had never been convicted of felony which entitled him to have that issue submitted to the jury. He introduced proof that his general reputation as a peaceable, law-abiding citizen was good. The court submitted the issue of suspended sentence. If in connection with his written charge on that subject he had included the instruction given verbally at the beginning of the week, and in the presence of the very venire from which the jurors were drawn to try appellant, it could

not be questioned that this court would decline to permit the conviction to stand. We are unwilling to give our sanction to a conviction where a verbal instruction such as complained of may have worked injuriously to the interest of one on trial. In the case of Chapman v. State, 42 Texas Crim. Rep., 135, 57 S. W. Rep., 965 it appears the trial judge believed that juries were making mistakes and turning defendants free under the law of apparent danger and reasonable doubt when they should not do so, and commented upon this matter at length on Monday morning of each week. In passing upon that question this court through Judge Davidson used the following language.

"After argument in a criminal case has been concluded the judge shall deliver to the jury a written charge, in which he shall distinctly set forth the law applicable to the case, but he shall not express an opinion as to the weight of the evidence, nor shall he sum up the testimony. It is beyond the province of a judge, sitting in a criminal case, to discuss the facts or use an argument in his charge, calculated to rouse the sympathy or excite the passions of the jury. It is his duty to state, plainly, the law of the case. They were intended to be strictly observed, and not covertly violated. A casual inspection of the excerpt shows a palpable violation of almost every provision of said article. If this charge had been given to the jury as the law of this case, the conviction, of course, could not stand. It is a severe criticism, animadversion and denunciation of the law of self-defense and reasonable doubt. These wise provisions of the law and of our criminal jurisprudence are severely arraigned as being subversive of justice and right. Whether or not the trial court believed in the wisdom of these safeguards of human life and liberty, it was incumbent on him, as it was his duty to observe them. These principles of our law are binding upon trial courts; must be respected, adherred to and enforced."

Doubtless the motives impelling the learned judge who tried the instant case were of the very best, and perhaps it would not have been improper at another place and time to call attention of citizens to what he deemed were improper results being arrived at by juries relative to the law in question; but after a careful re-examination of the entire verbal instruction complained of, and especially that portion relative to the suspended sentence law, we can not escape the conclusion that it may have deterred the jury in extending the benefit thereof to appellant in opposition to the views expressed by the presiding judge. Article 735, Vernon's C. C. P. provides in substance that the judge shall give a written charge in which he shall distinctly set forth the law applicable to the case. Article 736 reads:

"It is beyond the province of the judge sitting in criminal causes to discuss the facts or use any argument in his charge calculated to arouse the sympathy or excite the passions of the jury. It is his duty to state plainly the law of the case."

It .was doubtless the purpose of the trial judge to caution the jury against what he conceived to be miscarriages of justice, but we are not permitted to lose sight of the fact that such laudible purpos^ may have worked to the detriment of one tried by a jury who heard the judge's criticism relative to, the suspended sentence law, and its operation and abuse. For observations of this court heretofore relative to similar matters we refer to McMahan v. State, 61 Texas Crim. Rep., 489, 135 S. W. Rep., 562; Dean v. State, 58 Texas Crim. Rep., 98, 124 S. W. Rep., 924; Drake v. State, 65 Texas Crim. Rep., 282, 143 S. W. Rep., 1160; Murphy v. State, 57 S. W. Rep., 967.

Having concluded, upon a re-examination of the matters referred to, and a further investigation of the authorities, that we were in error in our original opinion in the particulars herein discussed, the motion for rehearing is .granted, the judgment of affirmance set aside, and the judgment of the trial court reversed and the cause remanded.

*Reversed and remanded.*