ANDERSON BOWMAN v. THE STATE.

No. 8372. Decided November 5, 1924.

No motion for rehearing filed.

1.—Murder—Evidence—of Other Acts—Not Admissible.

When testifying in his own behalf, appellant on cross-examination was

compelled to testify that Tom Henry had his pistol at the time of the homicide, and had gotten the pistol before appellant shot that boy at that house on the 21st day of February. This testimony was not admissible for any purpose. It is not permissible to prove other acts by a defendant. When offered as a witness it may be shown that appellant had been indicted for other offenses, such as felonies or offenses involving moral turpitude, but that he had shot a boy was clearly inadmissible.

2.—Same—Suspended Sentence—Evidence When Issue.

Evidence that appellant had shot a boy, was not admissible under the issue raised by him in an application for a suspended sentence, under the question of general reputation. See opinion for collation of authorities on this question.

Appeal from the District Court of Jefferson County. Tried below before the Hon. Geo. O'Brien, Judge.

Appeal from a conviction of murder; penalty, twenty years in the penitentiary.

*Blain & Jones,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Appellant is under conviction for the murder of Lillian Holland, his punishment having been assessed at confinement in the penitentiary for twenty years.

Appellant and deceased were both negroes. Lillian Holland and her husband were separated and she and appellant had for some time been living together in adulterous relations. On the night preceding the killing, over appellant's protest, she had remained away from home attending a party. When she returned early in the morning a quarrel arose between her and appellant in regard to her absence. Deceased went to her mother's house a short distance from the home of deceased, procured her mother's pistol and came back to the house where appellant was. The killing occurred a short time after she entered the house with the pistol. Appellant's defense, supported by other evidence as well as his own, was that he had attempted to take the pistol away from deceased to prevent her from shooting him and that in the scuffle over it the pistol was discharged accidentally resulting in her death. The State's evidence was that appellant had previously threatened to kill deceased; that he disarmed her and shot her at a time when he was in no danger. There seems to have been a sharp controversy as to whether one of the main State's witnesses who testified to most damaging facts against appellant was present at the time of the homicide, or immediately preceding or following it.

It was undisputed that the pistol with which the killing occurred belonged to deceased's mother, and that deceased herself brought it

to the place of the homicide only a few minutes before it occurred. Upon cross examination of appellant's State's counsel inquired of him as to where his own pistol was at the time of the killing, to which appellant replied that Tom Henry had it. The county attorney then asked appellant if Henry had gotten the pistol before appellant "shot that boy in that house on the 21st of February." Over objection he was required to answer, and said that Henry got the gun a few weeks after appellant had shot the boy in that house about February 21st. There being no issue as to what pistol was used at the time deceased was killed we are unable to see the relevancy of any inquiry on the part of the State as to the whereabouts of appellant's pistol at the time, and the form of the question as shown by the bill of exception rather indicates a purpose on the part of the State to get before the jury the fact that appellant had prior to this time shot another party. The learned trial judge seems to have admitted the testimony on the theory that it was unable to determine the credibility of appellant as a witness, because he charged the jury that it could be appropriated by them for no other purpose.

This testimony was not admissible for any purpose. Appellant was not asked if he had been indicted but the inquiry only served to inform the jury that he had shot some one in the same house where this present killing occurred. Nothing in the record indicates that any prosecution followed this act of appellant.

"Proof of mere accusations against or evidence of particular acts of misconduct, is not admissible to affect the credibility of a witness. Defendant or any other witness can only be impeached as to other offenses by showing that he had been legally charged with a felony or with a misdemeanor imputing moral turpitude." (Branch's Ann. P. C., Sec. 168, and authorities there collated.)

An application for suspended sentence had been requested in the event conviction was for manslaughter. This request placed appellant's general reputation in issue but the evidence just discussed does not appear to have been offered upon this issue, at least it was admitted by the court upon another issue as appears from the charge. But it was not admissible upon the question of general reputation. Some confusion had existed upon this matter where a request had been made for suspended sentence, but there seems no occasion for further misunderstanding of our holding upon that point since the report of the following cases: Moore v. State, 91 Texas Crim. Rep., 118, 237 S. W., 931; Johnson v. State, 92 Texas Crim. Rep., 582, 241 S. W. 484; Fountain v. State, 90 Texas Crim. Rep., 474, 241 S. W. 489; Waters v. State, 91 Texas Crim. Rep., 592, 241 S. W., 496; Brown v. State, 92 Texas Crim. Rep., 147, 242 S. W. 218. We cannot say the testimony erroneously admitted was not hurtful. It was certainly calculated to do harm.

For the reason given the judgment must be reversed and the cause remanded.

*Reversed and remanded.*