JESSE STEEN v. THE STATE.

No. 16232. Delivered January 17, 1934.
State's Rehearing Denied February 14, 1934.
Reported in 67 S. W. (2d) 874.

The opinion states the case.

*Lamar Bethea,* of Bryan, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is assault with intent to

murder; the punishment, confinement in the penitentiary for nine years.

Sylvester Steen, a negro, had gone to his home in an automobile with his brother, the appellant, for the purpose of removing his personal effects. A quarrel ensued between him and his wife, Haddee Steen, which resulted in Horace Reed, the constable of the precinct, being called to the house. Stafford Reed, the injured party, accompanied his brother, the constable, to the scene of the difficulty. When they arrived appellant was sitting in an automobile near the porch, and Sylvester was carrying his personal effects to the car. Stafford Reed, the injured party, entered the house while the constable remained in the yard. According to the testimony of the latter, he commanded Sylvester to quit quarreling with his wife and leave the place. At this juncture we quote from the testimony of the witness, as follows:

"When I went out there he (Sylvester) was just a little piece from his car and got to talking back to me—said a couple of words to me—and I asked him what he said and he said something about 'yes' and I asked him if he couldn't say 'yes sir' to a white man and he said something else and I said 'What was it you said,' and he turned around to me with a crank in his hand and said 'I said yeah.' He drew the crank back like he was going to hit me. He had the crank in his right hand and drew it back about half way. * * * I asked him what was it he said and he said 'I said yeah.' It was then just getting good dark. After he drawed back with the crank and made that reply to me I hit him with my pistol. I hit him on the head. I hit him because he had that crank drawed back. The attitude he was taking I believed he was going to hit me with the crank. He dropped the crank about the time he clinched me."

The witness further testified that his pistol flew out of his hand as he hit Sylvester and dropped on the porch; that as they wrestled Sylvester called for appellant; that at this point there was the sound of a blow and he heard his brother groan; that turning around, he saw his brother lying on the ground and appellant standing over him with a rifle in his hand; that he finally disengaged himself from Sylvester and secured the pistol from the gallery; that Sylvester grasped him around the waist from behind and called to appellant to come to his aid; that responding, appellant wrenched the gun from his hand; that placing the gun in his belt, appellant walked away with Sylvester; that he asked the parties to let him back his car out of the way before they left, which they did; that appellant

and Sylvester then drove away in the car with his pistol; that he pursued them, and, upon overtaking them, deliberately ran into their car and wrecked it; that they got out of the car and ran away. The injured party testified that while in the house he heard someone call for help, and that he stepped out on the porch to see what the trouble was. He said that as he stepped out of the house appellant struck him across the body with a Winchester, knocking him to the ground, and that as he tried to get up, appellant struck him on the head with the gun, rendering him unconscious. The testimony on the part of the state was to the effect that the "outer table" of the skull was fractured, and that the wound resulted in the confinement of the injured party in a hospital for several days. Moreover, there was testimony to the effect that the gun in the manner in which it was used was capable of producing death.

Testifying in his own behalf, appellant declared that he was sitting in the automobile near the porch when the difficulty took place between his brother Sylvester and the constable. He said that after the constable hit Sylvester with his pistol Sylvester and the constable clinched, and that while they were in this position the injured party struck Sylvester in the head with some instrument. He said that Sylvester reached over the constable's shoulder and struck the injured party some blows with an automobile crank. He denied that me made any assault on the injured party, but admitted that he disarmed the constable when Sylvester called for help. His testimony was to the further effect that after he had disarmed the constable, he and his brother left the scene of the difficulty and were pursued and run down by the constable in his automobile. Again, he declared that he participated in no assault on either of the white men, and had no intention at any time of killing either of them.

Appellant insists that the evidence is insufficient to support a conviction for assault with intent to murder, his position being that the state failed to show a specific intent to kill. A solution of the question is not free from difficulty. However, in view of the fact that the judgment must be reversed because of the erroneous admission of testimony, we pretermit discussion of the question.

In support of the application for a suspended sentence several witnesses testified that appellant's general reputation as a peaceable and law-abiding citizen was good. A contrary opinion was entertained by witnesses for the state. As shown in bill of exception No. 3, the state called to the witness stand O. G. Carson, a white man, who testified, over appellant's proper ob-

jection, that sometime prior to the transaction for which appellant was on trial appellant, while riding on a bus driven by the witness, was admonished by him for standing in front of the bus among some white ladies; that when he admonished appellant, appellant jumped off of the bus and seized a rock as if to throw it in the car; that he stopped the bus and jumped out, and that as he seized appellant, appellant struck him three or four blows in the face with the rock. The testimony of the witness disclosed an extraneous transaction, it being in no manner connected with the assault for which appellant was on trial. It shed no light on any issue in the case. It is error to prove that the accused had a difficulty with a third party where such difficulty is a separate and distinct matter not connected with the issue to be tried. Branch's Annotated Penal Code, sec. 166; Pace v. State, 124 S. W., 951. The fact that appellant had filed an application for a suspended sentence did not render the testimony in question admissible. Matthews v. State, 5 S. W. (2d) 994. We are constrained to hold that the bill of exception reflects reversible error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—The state, through the county attorney of Brazos County and attorneys appearing as special prosecutors, has filed a motion for rehearing, in which it is insisted that the evidence complained of in bill of exception No. 3 discussed in our original opinion, was admissible for the purpose of impeaching appellant. We commend counsel for their zeal and interest in behalf of the state and in urging their theory before this court, but we are not able to accept their view of the matter.

On direct examination appellant testified that he had never been convicted of a felony or of any other offense, that he had never been tried before, and had never been arrested before. On cross-examination, he was asked about a difficulty with Mr. Carson, and, in response to questions by state's counsel, appellant gave his version of that transaction. It was entirely foreign to the case on trial and immaterial to any issue in the case. It is true no objection was urged to this examination of appellant, but when the state called Mr. Carson to give testimony as

set out in bill of exception No. 3 objection was interposed upon the ground that the inquiry was regarding a matter wholly immaterial, irrelevant and foreign to the case at bar, and prejudicial to appellant's interest. The general rules are very tersely stated by Mr. Branch in his Annotated Texas Penal Code, sec. 165, as follows:

"The impeachment of defendant or any other material witness on an immaterial matter is not harmless error," the reason being that "by discrediting the witness and showing the jury that upon an immaterial matter he had testified falsely, it is calculated to make the jury believe that he may have testified falsely in regard to other matters which were material. * * * It is not proper to allow a witness to be cross-examined as to any matter which is collateral and immaterial to the issue merely for the purpose of contradicting him by other evidence. * * * When a witness is cross-examined on a matter collateral to the issue, his answer cannot be subsequently contradicted by the party putting the question."

Many cases will be found annotated supporting the text quoted. Among others, see Johnson v. State, 27 Texas App., 163; Rainey v. State, 20 Texas App., 473; Wilson v. State, 37 Texas Crim. Rep., 64; Ballard v. State, 160 S. W., 716; Holland v. State, 60 Texas Crim. Rep., 117. The reason for the rules is discussed at considerable length in some of the cases referred to, and it is not necessary to repeat it here.

The state's motion for rehearing is overruled.

*Overruled*