# MARCH 3, 1943

JOHN CLEMENTS V. THE STATE.

No. 22325. Delivered March 3, 1943.

GRAVES, Judge, dissenting.

The opinion states the case.

*Gordon A. Dotson, Levert J. Able,* and *Troy T. Stokes,* all of Houston, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Appellant was convicted of the murder of Luruth Letts and his punishment fixed at death.

From the evidence brought forward the following facts appear. Appellant was twenty-eight years old, a married man with four children, living in Houston. There appellant met and became associated with Miss Letts, a nineteen-year-old unmarried woman. Appellant finally abandoned his family and lived with Miss Letts in improper relations. She left Houston and went to Corpus Christi where she obtained employment. She was followed there by appellant. Miss Letts appeared to be lukewarm toward resuming her former relations with appellant, or at least he thought so. He became desperate over the situation, threatening to take her life and that of anyone with whom she might keep company. On the day of her death Miss Letts was an usherette in a theater in Corpus Christi. She was sent upstairs to perform some duty assigned to her, where she came in contact with appellant who was waiting in an ante room. With a newly purchased knife called an "East Dallas Special" he

stabbed her nine times, killing her instantly. Appellant then stabbed himself in the side in what appeared to be an attempt at suicide.

The State offered the following portions of appellant's confession:

"She (deceased) left Houston and came down here to live with her brother about one month ago. She moved from where she was living about two weeks ago and went to an apartment with a girl friend. I have been down here twice since she moved here and she didn't want to see me. That was what made up my mind to do what I did. I intended to kill her * * * Her brother brought her to work. She was working at the balcony of the Centre Theatre and when I walked up to her and said that I wanted to talk to her and that I was going back to Houston, she said that she didn't want to talk to me. I took the knife out of my pocket and she started screaming. I stabbed her several times. I don't know how many times * * * The knife that Joe Fawcett is showing me is the same knife that I stabbed Ruth with * * * I bought this knife this morning. I don't know where. I bought this knife with the intention of killing her * * *."

Upon the trial appellant seemed able to recall all incidents and relate them up to the very moment of the killing. He testified that when he tried to talk to deceased at the theater she appeared to not want to talk to him; that she upbraided him for having told the lady with whom she roomed about their former relations in Houston, whereupon she slapped him, and "that's the last thing I know. After that my mind went blank. I don't remember anything after that."

There are twenty-two bills of exception in the record, many of which we deem it unnecessary to discuss.

Bill of exception number one relates to a colloquy between the court and appellant's attorney regarding the examination of a prospective juror. The incident appears to be trivial and no error is presented.

Bill number two reflects that when the State proposed to introduce the confession of appellant it was objected to on the ground that no proper warning had been given, and that the same was not voluntarily made. It is noted that appellant did not deny that a warning had been given him, but claimed not to have remembered it if he was warned. However, the warning appears upon the face of the instrument itself and the fact of

such warning was testified to by other witnesses. There was no claim on the part of appellant that the confession was made under threats, coercion or fear. He merely claims that at such time he was physically weak, and suffering from the self-inflicted wounds and remembered very little about the whole transaction. The trial court gave an exhaustive charge relative to the confession, instructing the jury to disregard the same unless they believed beyond a reasonable doubt that the same was made voluntarily under proper warning and was not induced by fear, threats, coercion, or other improper influence.

Bill of exception number three reflects the following incident. While the witness who took appellant's confession was on the stand the jury was retired from the court room and in their absence the district attorney remarked, in substance, that he thought the State had made out a prima facie case as to the admissibility of the confession. The court then said: "Sss-h, you will be apt to ruin your case, it is a matter first for the court to pass upon and then the jury—not the district attorney." This transaction occurred in the absence of the jury and could in no way have resulted in injury to appellant.

Bill of exception number four brings forward a complaint because appellant was not permitted to show that deceased had at one time worked at a cafe or beer joint where "lots of trouble occurred." The inquiry relative to this matter is brought up in question and answer form by order of the court. It appears therefrom that the witness had answered that "lots of trouble" had occurred at the cafe, at which time the State interposed an objection and the court sustained it after the answer was in the record. The answer of the witness was not stricken and no further proceeding was had or requested regarding the matter.

Appellant filed an application for suspended sentence. Of course, it was necessary for appellant to prove that he had never been convicted of a felony before he was entitled to have the question of a suspended sentence submitted to the jury. It appears from the record that such proof was made not by asking appellant if he had ever been convicted of a felony, but the matter was gotten at in a rather roundabout way by his attorney eliciting from appellant the following evidence, without any objection from the State. "I have been arrested one time before this. That was in Houston. They arrested me for getting drunk one time. They put me in jail; I was in jail I believe about six or seven hours. I paid a fine of three dollars. I have never been

arrested any other time; I have never been in any trouble. I have never been in jail except on that occasion; that's the only time."

By bills five and six it appears that appellant was recalled to the witness stand by the State for the purpose of cross examination upon the point indicated. After calling attention to his testimony on direct examination that he had only been arrested and in jail one time the State then inquired if he had ever served in the United States Army, to which appellant replied that he had served in the cavalry branch of the army in 1934 for a period of about three months. Over objection of appellant that the testimony then sought to be elicited was not germane to any matter pertinent to the case and would tend to prejudice the jury against appellant the State developed from him that he had been "absent without leave" and had never gone back to the army; that as a result the commanding officer of Ellington Field, in 1941 ordered him confined to the field for three or four weeks. After this incident was developed the court instructed the jury orally as follows: "The jury are instructed now by the Court as to any evidence along the line of the man having been in the army, and whether he was absent without leave or whatever it was, it may be considered by the jury on the question of whether or not this is a proper case to grant the application for a suspended sentence, and will be limited to the question of his credibility as a witness in this case. You are not trying him for desertion, and it has no bearing on his guilt or innocence in this case whether he ever belonged in the army or not. You will not take it as a circumstance of guilt or innocence in this case, but it is expressly limited as affecting his credibility as a witness, if it does, and for no other purpose."

Upon redirect examination of appellant regarding the incident he testified as follows: "I later returned after I left the army, yes, sir. When I returned, I reported to Roger M. Crow, Personnel Officer, Air Corps Command, Ellington Field. I didn't exactly take up my duties as a soldier there in the camp after returning. They showed me a place to stay and told me I could stay there a few days until they could check up on it; said they didn't have nothing on me, had nothing against me, and didn't know what I had done. They gave me a place to stay and said I would be privileged to go anywhere in the camp but not to leave it because it would go against me. I tried to get them to let me serve my time, I wanted to serve it, that is, the rest of my enlistment time. They said they would like to have me, but Washington would have to decide it. They checked up on me

physically; took me to the hospital and kept me there all one afternoon and took X-rays of me from the waist up. I don't know what they were for, I asked them what they were for and they said they couldn't tell me. But they took those X-rays and sent them to Washington. When they got word back from Washington, I got discharged; I don't know what for, they said they weren't allowed to tell me. As to the character of discharge they gave me, it was a blue discharge, I don't know whether it was a medical discharge or not. It wasn't a dishonorable discharge because it didn't have the word dishonorable nowhere on it."

It will be observed that whatever may have occurred with reference to appellant having been absent from the army without leave there was no showing that he was ever tried for desertion by a court, military or otherwise. It was mere proof of an isolated incident of misconduct on the part of appellant for which he was perhaps liable for some character of punishment under military rules.

The court advised the jury that the incident was usable to enable them to determine whether appellant was entitled to a suspended sentence, and also upon the question of his credibility as a witness. The court was wrong in each instance. Prior to the opinion in Johnson v. State, 91 Tex. Cr. R. 582, 241 S. W. 484, some confusion had arisen with reference to proving specific acts of misconduct of accused upon the issue of suspended sentence. That case was first affirmed but upon further consideration a motion for rehearing was granted and the judgment reversed. Many cases were reviewed and authorities cited in an effort to clear up the confusion that existed. It was then announced that when an application for suspended sentence was filed it put in issue accused's general reputation, but that in supporting or attacking the same both accused and the State were required to proceed under the well established rules of evidence and could not make such proof by evidence of isolated incidents of good conduct on the one hand or alleged misconduct on the other. The facts in the Johnson case are quite similar to those occurring here. Accused there had testified that he had never been convicted of a felony, and went further and testified that he had never been arrested before. The State then sought to rebut this evidence by showing that the reason he had never been arrested was that he had resisted an officer at the point of a pistol to avoid arrest. This language occurs in the Johnson case: " * * * appellant had no right upon the issue of his general reputation to show that he had never been arrested. It became the duty of the State when that issue was injected by

appellant * * * to have objected thereto, or move that the same be stricken from the record. Having permitted this illegal testimony to get into the record without objection the State could not under the guise of rebutting it introduce other illegal evidence over objection of appellant. Zimmer v. State, 64 Tex. Cr. R. 114; Smith v. State, 52 Tex. Cr. R. 32."

The State should have objected to the testimony offered by appellant that he had only been arrested the one time for drunkenness and had never had any other trouble, and not sought to refute the same by proof of the facts complained of in bills five and six. Following the holding. in Johnson's case are Williams v. State, 130 Tex. Cr. R. 86, 91 S. W. (2d) 709; Brown v. State, 129 Tex. Cr. R. 394, 87 S. W. (2d) 720; Steen v. State, 125 Tex. Cr. R. 361, 67 S. W. (2d) 874; Skelton v. State, 106 Tex. Cr. R. 90, 291 S. W. 238; Bowman v. State, 98 Tex. Cr. R. 349, 265 S. W. 1038, and many others.

We further call attention to the holding in Mobley v. State, 89 Tex. Cr. R. 646, 232 S. W. 531, and Harris v. State, 99 Tex. Cr. R. 60, 268 S. W. 160, in which accused sought to introduce his honorable discharge from the army upon the question of his good reputation where the issue of suspended sentence was involved. It was held that such could not be done. To sustain the court's ruling here would be contrary to the holdings in the two cases last mentioned. The law can not be one way for the State and another way for an accused.

The court was equally in error instructing the jury that the incident complained of could be considered by them in determining the credibility of appellant as a witness.

"Proof of mere accusations against, or evidence of particular acts of misconduct is not admissible to affect the credibility of a witness. Defendant or any other witness can only be impeached as to other offenses by showing that he had been legally charged with a felony or with a misdemeanor imputing moral turpitude," or convicted therefor. Branch's Ann. Tex. P. C., page 102, Sec. 168, and authorities there cited. See also Carlile v. State, 90 Tex. Cr. R. 1, 232 S. W. 822 and authorities listed in Note 5 under Sec. 313, page 217, 45 Tex. Jur.

There are many other bills of exception in the record. They relate to incidents that will not arise upon another trial, hence are not discussed. The major part of said bills bring forward complaint of argument of State's counsel. We note that while

the trial court did not prohibit counsel for appellant from interrupting the argument of prosecuting counsel the court did discourage objections being made during such argument. We only observe that serious complications may arise under such procedure as is evidenced by the holdings in Weige v. State, 81 Tex. Cr. R. 476, 196 S. W. 524; Simmons v. State, 93 Tex. Cr. R. 421, 248 S. W. 392; Spears v. State, 91 Tex. Cr. R. 51, 237 S. W . 270; Harris v. State, 93 Tex. Cr. R. 544, 249 S. W. 485.

In view of the penalty speculation as to the effect of the error presented in bills numbers five and six will not be indulged.

The judgment is reversed and the cause remanded.

GRAVES, Judge (Dissenting).

My Brethren have agreed to a reversal of this case upon the sole proposition that appellant was caused to testify by the State, as shown in bill of exception No. 6, that he deserted from the U. S. Army in 1934; that he was absent without leave after serving in the army about three months; that he then was gone for about seven years; that he returned to the army and was confined at Ellington Field for about three or four weeks. The appellant had filed an application for a suspended sentence, and he testified on his direct examination relative to his suspended sentence application as follows:

"I have been arrested one time before this. That was in Houston. They arrested me for getting drunk one time. They put me in jail; I was in jail I believe about six or seven hours. I paid a fine of three dollars. I have never been arrested any other time; I have never been in any other trouble. I have never been in jail except on that occasion; that's the only time."

Evidently this testimony was offered for the purpose of supporting his plea for a suspended sentence, and upon it, I think, the jury could have based a verdict suspending his sentence had they seen fit to do so. I think the State had the right to cross-examine appellant on this matter. This testimony was offered for but one purpose, so it seems to me, and that was in support of appellant's plea for a suspended sentence, and, if believed, it would show that appellant had not been convicted of a felony in this State or in any other state. Surely it was the testimony, there being no other found in the record of like import, upon which the trial court acted when he submitted to the jury appellant's plea for a suspended sentence in the event of a conviction, and accordingly it is noted that the trial court submitted to the

jury appellant's application for a suspended sentence in a proper charge herein. I think it was permissible for the State to cross-examine appellant upon the statement made by him, and evidently relied upon by him as establishing the fact that he had never been convicted of a felony. The State might have shown that appellant had been convicted of desertion from the army and given a severe penalty in the Federal prison, which, had it been true, would have rendered nugatory his plea for a suspended sentence. It did show that he enlisted in the army; that he served three months; that he deserted therefrom, was A. W. O. L. for about seven years; that he was confined at Ellington Field upon his return to the army for about three weeks. Desertion from the army is punished as determined by a Court Martial; it could have amounted to a very severe punishment, and if such a felonious one had been shown, the State would have been able to have defeated the submission of his plea for a suspended sentence.

The trial court's ruling on this matter is rather confusing, but it is evident therefrom that same was thought to have some bearing on the plea for a suspended sentence, as well as being limited to the credibility of the witness.

I think that had the State been able to show by appellant that he had been convicted of a felony in the Federal courts, then he would not have been eligible to receive a suspended sentence in the State court in this trial. In point by analogy only we find the case of Brown v. State, 105 Tex. Cr. R. 586, 289 S. W. 682; Edwards v. State, 134 Tex. Cr. R. 512, 116 S. W. (2d) 711.

In the majority opinion herein my Brethren cite the case of Johnson v. State, 91 Tex. Cr. R. 582, 241 S. W. 484. In that case our present Presiding Judge was originally of a like opinion to my present one in that the accused testified that "he had never been convicted of a felony in this or any other state, and that he had never been arrested in his life." The court in its original opinion held that it was not error for the State to show an unprovoked assault with a pistol upon a constable by the accused, evidently upon the theory that the accused ought to have been arrested for such assault, regardless of whether he had been or not. However, on motion for a rehearing the court held the admission of such incident was erroneous, basing the same upon the proposition that such an assault was a specific act of misconduct, and not the proper way to prove reputation for being peaceable and law-abiding. With that holding I have

no quarrel. The accused had already testified that he had suffered no previous conviction for a felony, and no attempt was made to show that the assault upon the constable eventuated in a conviction for a felony. Not so in this case. At no time, save by inference, did appellant say he had never been convicted of a felony, but he did say so by inference. He merely said he had never been in trouble, and had never been arrested except for drunkenness. I think the State then had the right to cross examine him on this meager yet sufficient proof to the trial court to establish his legal right to the submission of a suspended sentence plea.

I do not think that a discharge from the army, either honorable or dishonorable, would be admissible upon the question of an accused's reputation. I am in accord with Harris v. State, 99 Tex. Cr. R. 60, 268 S. W. 160, as well as Mobley v. State, 89 Tex. Cr. R. 646, 232 S. W. 531, wherein it is held that such a discharge is inadmissible to affect general reputation. I also am in accord with the statement in the Mobley case wherein it is said:

"An examination of the statutes governing suspended sentences discloses the fact that two issues are mentioned upon which proof may be made by the accused who asked for such suspended sentence, to-wit: general reputation and prior conviction of a felony."

I think the State had the right to try to show that appellant had been previously convicted of a felony, and that such cross-examination was proper upon the doctrine of prior conviction for a felony. Thus believing, I think this cause should be affirmed, not reversed. I therefore respectfully enter my dissent herein to its reversal.